Argued and submitted April 29, 2010, affirmed March 2, petition for review allowed August 18, 2011 (350 Or 573)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

EUGENE CHIMEZIE OFODRINWA,
*Defendant-Appellant.*

Washington County Circuit Court
C080583CR; A139764

250 P3d 405

Mary M. Reese, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Michael R. Washington, Senior Assistant Attorney General, argued the cause for respondent. With him on the brief were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Edmonds, Senior Judge.

HASELTON, P. J.

**HASELTON, P. J.**

Defendant appeals from a conviction, following a bench trial, on one count of second-degree sexual abuse, ORS 163.425. He raises two assignments of error. In his first assignment, defendant contends that the trial court erred in denying his motion for judgment of acquittal (MJOA) because there was legally insufficient evidence to corroborate his confession to the crime of second-degree sexual abuse. *See* ORS 136.425(1) (2007), *amended by* Or Laws 2009, ch 875, § 1.[1] In his second assignment of error, defendant contends that the trial court erred in denying his MJOA because the state failed to prove that the victim did not actually consent to the sexual activity that predicated his conviction. We reject defendant's second assignment of error without discussion, *see State v. Stamper*, 197 Or App 413, 106 P3d 172, *rev den*, 339 Or 230 (2005), and write to address only his first assignment. For the reasons explained below, we affirm.

The facts material to our analysis and disposition are undisputed. On the evening of December 24, 2007, during the course of his investigation of "a male versus female dispute," Portland Police Officer Tully learned that defendant, who was 21 at the time, was dating a 16-year-old girl, C. Tully arrested defendant for harassment and, while conducting an inventory of his person, discovered an empty condom wrapper in defendant's left front pants pocket. After speaking to C, Tully transported defendant to the police station for questioning.

At the police station, following advice of defendant's *Miranda* rights, Tully asked defendant about the nature of his relationship with C. Defendant told Tully that he and C had been dating for 11 months, that C turned 16 years old on

---

[1] The 2007 version of ORS 136.425(1) provided, in part:

"A confession or admission of a defendant * * * cannot be given in evidence against the defendant when it was made under the influence of fear produced by threats; *nor is a confession only sufficient to warrant the conviction of the defendant without some other proof that the crime has been committed.*"

(Emphasis added.) The language of the statute italicized above, which is central to the issue discussed in this case, was materially altered in 2009. *See* Or Laws 2009, ch 875, § 1. However, those amendments do not apply here. *Id*. § 3 (amendments to ORS 136.425 apply to offenses committed after January 1, 2010).

December 11, and that "he loved her"—but denied ever having sexual intercourse with C because "he didn't want the relationship to be like that."

Tully, apparently unconvinced, then asked defendant when he last had sexual intercourse with C. At that point, defendant admitted that he and C had been having sexual intercourse. Most specifically, and pertinent to this appeal, defendant stated that they had last had sexual intercourse that morning at his house in Beaverton. Defendant also confirmed that the condom wrapper Tully had found in his pocket had contained the condom that he had used to have sexual intercourse with C that morning. Defendant acknowledged that he knew that C was 15 years old when they first started having sexual intercourse.

Ultimately, the state charged defendant with four counts of second-degree sexual abuse. ORS 163.425. That statute provided, in part: "A person commits the crime of sexual abuse in the second degree when that person subjects another person to sexual intercourse * * * and the victim does not consent thereto."[2]

At trial, Tully testified, recounting the facts described above. C did not testify. However, her mother, Kushner, and her cousin, Thomas, did testify for the state. Kushner stated that she had first learned that C and defendant were romantically involved—and defendant's age— when she received a call from the assistant principal at her daughter's high school who had wanted to make sure that Kushner "knew what was going on." Later that same day, which was months before defendant's arrest in December, C had brought defendant home after school. Kushner spoke with defendant, telling him "the age thing was not okay" and that she disapproved of their relationship. According to Kushner, defendant responded that he "understood." Kushner testified that, although she had believed that C and

---

[2] The four charges were nearly identical; each alleged that, in "a separate act and transaction," from the conduct alleged in the other counts, "defendant, on or between December 11, 2006 to December 24, 2007, in Washington County, Oregon, did unlawfully and knowingly subject [C] to sexual intercourse, [C] not consenting thereto by reason of being under 18 years of age."

defendant had ended their relationship at that point, she learned months later that they had, in fact, continued dating.

Kushner also testified that, because of her inconsistent work schedule, there were times when C would be home alone and that defendant could have come over without her knowledge. Kushner further testified that, at some point, after she received the call from the assistant principal—the specific timing is unclear from the record—she discovered an empty condom wrapper in her living room and had asked C about it.[3] There was no evidence that that condom wrapper was the same type or variety as the one later found during the inventory of defendant's person.

Thomas, C's cousin, testified that she had spent time with, or encountered, defendant and C together on four occasions—and that, on one of those occasions, C and defendant had been alone at the apartment C shared with her mother. Thomas testified that it was apparent on those occasions that C and defendant were dating because she would see them "holding hands, kissing, [and] acting like boyfriend and girlfriend." Finally, Thomas testified about a conversation that she had had with defendant not long before he was arrested on the harassment charge. According to Thomas, she had talked to defendant about C's age and warned him that "he better be safe so nothing happens because [she didn't] want to see him get hurt or [C]," and that, "if they were having sexual intercourse, that they better be careful and make sure that it doesn't, like, get beyond their friends and stuff so that it doesn't end up like [this criminal case]." Defendant replied that he understood.

At the close of the state's presentation of evidence, the state elected to identify each of the counts of second-degree sexual abuse with the specific evidence adduced at trial. The state clarified that Count 1—the count that is the subject of this appeal—alleged that defendant had sexual intercourse with C on December 24, 2007, the day defendant was arrested for harassment. Count 2 referred to defendant's alleged sexual intercourse with C corresponding with the

_____

[3] To avoid potential hearsay issues that could arise because C did not testify at trial, the state agreed to have its witnesses avoid testifying as to any statements C made to them.

empty condom wrapper that Kushner found on the living room floor in her and C's apartment. Counts 3 and 4, individually, referred to incidents of alleged sexual intercourse that occurred at "separate time[s] aside" from the other counts.

Defendant subsequently moved for judgment of acquittal as to each of the four counts, invoking both *State v. Delp*, 218 Or App 17, 178 P3d 259, *rev den*, 345 Or 317 (2008), and *State v. Simons*, 214 Or App 675, 167 P3d 476 (2007), *rev den*, 344 Or 43 (2008). Specifically, defendant argued that the state had presented insufficient evidence to corroborate his confession that he had engaged in sexual intercourse with C during any of the instances referenced in those counts.

The state countered that defendant's inculpatory admissions were sufficiently corroborated by a combination of physical and testimonial evidence. Specifically, the state pointed to (1) the two condom wrappers (the one found in defendant's pants pocket on December 24, 2007, and the other, found in the apartment); (2) evidence (primarily from Thomas) that C and defendant were in a physically demonstrative relationship, and that defendant and C had opportunities to spend time alone together; and (3) defendant's "tacit admissions" to Kushner and Thomas acknowledging that "he could get in trouble" for his relationship with C.

The trial court granted defendant's MJOA on Counts 2, 3, and 4, but denied the motion as to Count 1—again, the count corresponding to defendant's confession that he had sexual intercourse with C the morning of December 24, 2007. Specifically, the trial court found that evidence that defendant and C "were boyfriend and girlfriend," defendant's tacit admissions to Kushner "that some kind of a relationship was going on and to * * * Thomas that an intimate relationship was occurring," and the empty condom wrapper found on defendant's person that evening, including defendant's identification of that wrapper as corresponding to his intercourse with C that morning, corroborated defendant's confession as to Count 1. The trial court then convicted defendant on that count of second-degree sexual abuse.

On appeal, defendant contends that the evidence relied on by the trial court was legally insufficient to corroborate his confession as to Count 1. In particular, defendant

argues that his identification of the condom wrapper found in his pocket as the one containing the condom he had used with C the morning of December 24, 2007, was part of his confession and, thus, could not be relied on for corroboration. Defendant further contends that the remaining evidence relied on by the trial court "was insufficient to support an inference that [C] was subjected to the specific criminal harm alleged"—*viz.*, that defendant engaged in sexual intercourse with C.

The state does not dispute that the trial court erred in including defendant's *identification* of the empty condom wrapper in the corroborative "mix," because defendant's statements in that regard are properly deemed to be part of his confession and, thus, could not corroborate it. Nevertheless, the state maintains that the remaining evidence—particularly the empty condom wrapper itself—provides sufficient, independent corroboration of defendant's confession. The state further contends that, assuming additional corroboration is needed, certain of defendant's statements before he explicitly admitted to engaging in intercourse with C—*viz.*, that he and C had been dating 11 months, that he loved C, and that C had turned 16 years old on December 11—are "admissions" separate and apart from the confession and, as such, may also be used to corroborate defendant's confession.

■ We conclude, as amplified below, that the state adduced legally sufficient corroboration of defendant's confession that he had engaged in sexual intercourse with C on December 24, 2007. In that regard, and without reference to other evidence proffered by the state, the empty condom wrapper found on defendant's person on the evening of December 24, 2007, coupled with the evidence that defendant and C were in an ongoing, physically demonstrative romantic relationship that had continued over a period of months sufficiently corroborate defendant's confession as to the conduct alleged in Count 1.

■■ Under ORS 136.425(1) (2007), which applied to the charge at issue here, a defendant's conviction could not be predicated solely on an uncorroborated confession. That statute provided, in part:

"A confession or admission of a defendant * * * cannot be given in evidence against the defendant when it was made under the influence of fear produced by threats; *nor is a confession only sufficient to warrant the conviction of the defendant without some other proof that the crime has been committed.*"

(Emphasis added.) To satisfy the corroboration requirement of ORS 136.425(1) (2007), the state was required to adduce evidence, independent from the confession, "that *tends* to prove or establish" the *corpus delicti* of the pertinent offense—that is, that (1) the injury or harm specified in the crime occurred and (2) the injury or harm was caused by someone's criminal activity. *State v. Lerch*, 296 Or 377, 393, 397, 677 P2d 678 (1984) (emphasis in original). *See also State v. Chatelain*, 347 Or 278, 283-87, 220 P3d 41 (2009) (discussing which elements of an offense require corroboration). "[S]ome other proof" means that "there is enough evidence from which the [factfinder] may draw an inference that tends to establish or prove that a crime has been committed." *Lerch*, 296 Or at 398.

Here, defendant was charged with second-degree sexual abuse for having sexual intercourse with C, a charge predicated on C's inability to consent to that intercourse because she was under 18 years of age. *See* ORS 163.425 (2007) (defining second-degree sexual abuse); ORS 163.315 (providing that a person is legally incapable of consenting if, *inter alia*, the person is "[u]nder 18 years of age"). Thus, the state must have adduced "enough evidence from which the [factfinder] may draw an inference that tends to establish or prove," *Lerch*, 296 Or at 398, that C was subjected to sexual intercourse while she was incapable of giving consent by reason of being under 18 years of age. *See Simons*, 214 Or App at 686 (evidence that the alleged victims were "subjected to the specific sexual contact described in the indictment for that offense, without the person's consent" necessary to corroborate the defendant's confession to various sexual offenses, including first-degree sexual abuse, committed against three women alleged to be incapable of consenting due to "mental defect or physical helplessness"); *State v. Fry*, 180 Or App 237, 246, 42 P3d 369 (2002) (evidence of sexual intercourse

necessary to corroborate the defendant's confession to rape and incest with the child).

Here, the state adduced evidence that, on the evening of December 24, 2007, defendant had an empty condom wrapper in one of his pants pockets. That supported a reasonable inference that defendant had recently engaged in intercourse with *someone*. To be sure, that is not the only reasonable, or necessary, inference—but that is not required. *See, e.g., Fry*, 180 Or App at 246. Thus, that evidence corroborated defendant's confession to the extent that he stated that he had engaged in intercourse on the morning of December 24.

The inquiry thus reduces to whether the state adduced evidence "tend[ing]" to show, *Lerch*, 296 Or at 398, that the person with whom defendant had intercourse that morning was C. In that regard, the state adduced evidence that defendant and C were in an ongoing, physically demonstrative romantic relationship—and had been for months. That evidence supports a reasonable inference that C was the person with whom defendant had intercourse. Again, that is not the only reasonable inference—it could have been that defendant had intercourse with someone other than the person whom he had been dating for months. And, no doubt, as defendant argues, explicit evidence that defendant and C had an ongoing sexual relationship would support a stronger inference. Nevertheless, given the nature and duration of defendant's relationship with C, the corroborative inference that the state propounds is patently reasonable. Accordingly, the state adduced legally sufficient corroboration of defendant's confession that he had engaged in intercourse with C on December 24, 2007.[4]

Defendant's reliance on our decisions in *State v. Campbell*, 218 Or App 171, 178 P3d 337 (2008), *Delp*, 218 Or App 17, and *Simons*, 214 Or App 675, is unavailing. The common thread in those cases, all of which involved alleged

---

[4] We fully appreciate that the state's proffered corroboration partakes, to some extent, of a "stacking of inferences." In that regard, we emphasize that here, unlike in some other cases in which we have expressed concerns about that dynamic, *see, e.g., State v. Lupercio-Quezada*, 224 Or App 515, 198 P3d 973 (2008); *State v. Bivins*, 191 Or App 460, 83 P3d 379 (2004), defendant's conviction is not predicated solely upon such inferences. Rather, the inferences here merely corroborate defendant's confession.

sexual offenses committed against people legally incapable of giving consent, was that the state had failed to adduce sufficient, corroborating evidence going to the first prong of the *corpus delicti*, that the specified injury or harm alleged in each offense actually occurred. *Campbell*, 218 Or App at 177; *Delp*, 218 Or App at 29; *Simons*, 214 Or App at 687-88.

Our decision in *Delp* is representative. There, the defendant was charged with, among other offenses, two counts of first-degree sodomy and one count of first-degree sexual abuse based on a confession he gave to police. 218 Or App at 19-21. The defendant confessed that, on four occasions, while he was having sexual conversations with strangers online, he had exposed himself to his girlfriend's one-year-old daughter, had placed the child's hands on his penis, and had inserted his penis into the child's mouth. *Id.* at 20. On the most recent occasion, the defendant told police that he had ejaculated into a pink towel after removing his penis from the child's mouth. The defendant further confessed that he had rubbed and licked the child's pubic area. *Id.*

To corroborate the defendant's confession, the state relied on evidence that the defendant had access to the alleged victim when no other adults were present in the home, including on the specific day that the defendant had confessed to using the pink towel, and that a laundered pink towel was found and seized from the home. *Id.* at 27. According to the state, that evidence demonstrated that the defendant "had the means and the opportunity to commit the two charges of sodomy and the one charge of sexual abuse" with the child. *Id.* (internal quotation marks omitted). Additional evidence from the defendant's explicit online conversations and his possession of child pornography showed that the defendant was attracted to young children. *Id.*

We held that the state's proffered independent evidence was legally insufficient to corroborate the defendant's confession. *Id.* at 29-30. In particular, we held that the proffered evidence did not tend to show that the harm or injury of the *corpus delicti* for the first-degree sodomy and sexual abuse charges, which required that the alleged victim be subjected to "deviate sexual intercourse" and "sexual contact," respectively, actually occurred. We observed:

> "None of the evidence offered by the state independent of the confession tends to demonstrate or gives rise to an inference that the alleged victim was the subject of the specific acts of sodomy and sexual abuse set forth in the indictment. Said another way, no reasonable juror could infer from [the] defendant's possession of child pornography, his sexual interest in children, the existence of a recently laundered pink towel, and [the] defendant's opportunity to commit the crimes, that the child was the victim of sodomy or sexual abuse, whether those facts are considered separately or together."

*Id.* at 29 (footnote omitted). *See also Campbell*, 218 Or App at 177 (evidence that the defendant had the opportunity to commit the abuse, an unspecified improper purpose, and "guilty knowledge" did not tend to show that the alleged victim had been sexually abused); *Simons*, 214 Or App at 687-88 (evidence that the defendant, who worked in a residential Alzhemiers unit, had engaged in sexually aggressive misconduct towards coworkers, had a professed interest in older women, had unsupervised access to patients, and that one patient was acting out, did not tend to show that the patients had been sexually abused).

Here, in contrast, the corroborating evidence does tend to show that the harm alleged—that C was subjected to sexual intercourse while she was incapable of giving consent—did, in fact, occur. Unlike the evidence at issue in *Campbell*, *Delp*, and *Simons*, here, the physical evidence—an empty condom wrapper found on defendant—*is* specifically indicative of the act of sexual intercourse, the physical act underlying the second-degree sexual abuse charge. Moreover, unlike the evidence in *Delp* and *Simons* that the alleged victims fell into a class of persons to whom the defendants were *generally* attracted, the evidence in this case is that defendant was specifically attracted to—and, indeed, was actively involved in an ongoing, physically demonstrative relationship with—C. *Cf. Campbell*, 218 Or App at 177 (refusing to infer that the defendant had a propensity to sexually abuse small children and acted in conformity with that propensity on the occasion in question).

We conclude by reiterating our observation in *State v. Muzzy*, 190 Or App 306, 316, 79 P3d 324 (2003), *rev den*,

336 Or 422 (2004): "We cannot, and will not, pretend that the principles expressed in *Lerch* * * * and *Fry* are precise, much less that their application is easy." That application is commonly complicated by circumstantial ambiguity. Nevertheless, here, as a matter of law and common sense, the combination of the condom wrapper on defendant's person and the nature and duration of defendant's relationship with C provided legally sufficient corroboration of defendant's confession.

Affirmed.