No. 20 April 25, 2013 507

IN THE SUPREME COURT OF THE
STATE OF OREGON

STATE OF OREGON,
*Respondent on Review*,

*v.*

EUGENE CHIMEZIE OFODRINWA,
*Petitioner on Review*.

(CC C080583CR; CA A139764; SC S059446)

En Banc

On review from the Court of Appeals.*

Argued and submitted January 13, 2012; resubmitted January 7, 2013.

Mary M. Reese, Senior Deputy Public Defender, Office of Public Defense Services, Salem, argued the cause and filed the brief for petitioner on review. With her on the brief was Peter Gartlan, Chief Defender.

Timothy A. Sylwester, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. With him on the brief were John R. Kroger, Attorney General, and Anna M. Joyce, Solicitor General.

KISTLER, J.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

––––––––––

* Appeal from Washington County Circuit Court, Gayle A. Nachtigal, Judge. 241 Or App 214, 250 P3d 405 (2011).

**KISTLER, J.**

A person commits the crime of second-degree sexual abuse when "that person subjects another person to sexual intercourse *** and the victim does not consent thereto." ORS 163.425(1) (2005).[1] The issue in this case is what the phrase "does not consent" means. Defendant argues that it refers only to those instances in which the victim does not actually consent; the state responds that it also includes instances in which the victim lacks the capacity to consent. The trial court agreed with the state and convicted defendant of second-degree sexual abuse. The Court of Appeals affirmed. *State v. Ofodrinwa*, 241 Or App 214, 250 P3d 405 (2011). We allowed defendant's petition for review and now affirm the Court of Appeals decision and the trial court's judgment.

On December 24, 2007, a Portland police officer investigated a dispute between defendant and his girlfriend. During that investigation, the officer learned that defendant was 21 years old and that his girlfriend (the victim) was 16 years old. Defendant admitted to the officer that he had had sexual intercourse with the victim on several occasions during the previous year. Given that information, a grand jury indicted defendant for four counts of second-degree sexual abuse. Specifically, the indictment alleged that, on four occasions "on or between December 11, 2006 to December 24, 2007," defendant "unlawfully and knowingly subject[ed the victim] to sexual intercourse, [the victim] not consenting thereto by reason of being under 18 years of age." Defendant waived his right to a jury trial, and the parties tried the charges to the court.

At trial, the state relied primarily on defendant's statements to the officer to establish that defendant had engaged in sexual intercourse with the victim. The state presented no evidence to show that the victim had not actually consented to sexual intercourse; it relied solely on the victim's age to prove that she lacked the capacity to consent. *See* ORS 163.315(1)(a) (providing that persons

---

[1] Because the conduct that gave rise to this case occurred between December 11, 2006 and December 24, 2007, ORS 163.425 (2005) applies. Unless otherwise specified, citations are to the 2005 edition of the Oregon Revised Statutes.

"[u]nder 18 years of age" are "considered incapable of consenting to a sexual act"). At the end of the state's case, defendant moved for a judgment of acquittal on two grounds. First, he argued that the state had failed to corroborate his confessions to the officer. Second, he argued that ORS 163.425 required proof that the victim had not actually consented; he contended that the victim's lack of capacity to consent was not sufficient to prove a violation of that statute.

The trial court found that the state had not corroborated defendant's confessions to three of the four charges and acquitted him of those charges. The remaining charge arose out of an incident that allegedly occurred shortly after the victim's sixteenth birthday. The trial court ruled that the state had corroborated defendant's confession to that charge. Regarding defendant's alternative argument, it ruled that proof that the victim lacked the capacity to consent because of her age was sufficient to prove that she "d[id] not consent" within the meaning of ORS 163.425. After denying defendant's motion for judgment of acquittal with regard to one charge, the trial court found him guilty of that charge and entered judgment accordingly.

The Court of Appeals affirmed the trial court's judgment. It relied on its decision in *State v. Stamper*, 197 Or App 413, 106 P3d 172, *rev den*, 339 Or 230 (2005), for the proposition that the victim's lack of capacity to consent was sufficient to prove that she "d[id] not consent" within the meaning of ORS 163.425. *See Ofodrinwa*, 241 Or App at 216. The Court of Appeals also concluded that the state had corroborated defendant's confession regarding the one incident. *Id.* at 225. We allowed defendant's petition for review and asked the parties to focus on the first issue that defendant raised—whether the phrase "does not consent" in ORS 163.425 refers only to actual consent or whether it also refers to the lack of capacity to consent. We limit our discussion to that issue.

This court has identified a methodology for construing statutes to determine the legislature's intent. *See State v. Gaines*, 346 Or 160, 206 P3d 1042 (2009) (explaining that methodology). However, as the Court of

Appeals observed in *Stamper*, "mechanical application" of that methodology does not lead to a clear answer regarding the meaning of ORS 163.425. 197 Or App at 426. Rather, as the court reasoned in *Stamper*, "depending on which rules [of construction] are given emphasis, different readings of [ORS 163.425] may be justified." *Id.* We agree with that observation. In large part, the difficulty that the Court of Appeals identified arises from the fact that, in enacting and amending the statutes prohibiting sexual abuse, the legislature has not always been completely consistent in the way that it has viewed consent.

As explained more fully below, in enacting the 1971 Criminal Code, the legislature used the phrase "does not consent" to refer to instances in which the victim does not actually consent and also to instances in which the victim lacks the capacity to consent. In 1979, the legislature amended the sexual abuse statutes in a way that, at least textually, suggests that the phrase "does not consent" applies only to the lack of actual consent. In 1983, the legislature again amended the sexual abuse statutes to add a provision, which is now codified as ORS 163.425.[2] Although the issue is not free from doubt, the 1983 legislature appears to have used the phrase "does not consent" in ORS 163.425 to refer only to the lack of actual consent. Finally, in 1991, the legislature modified the sexual abuse statutes to create three degrees of that crime and provided a defense to all three degrees of that crime. In doing so, the legislature used the phrase "does not consent" in ORS 163.425 to refer both to the lack of the capacity to consent due to age and also to the lack of actual consent.

Before we consider the effect of the 1991 amendment on the 1983 amendment, we first describe the context that preceded the 1983 amendment. We then discuss the 1983 amendment to the sexual abuse statutes. Finally, we consider the meaning and effect of the 1991 amendment to the sexual

---

[2] As discussed more fully below, the 1983 amendment initially provided an additional ground for committing first-degree sexual abuse. *See* Or Laws 1983, ch 564, § 1. In 1991, the legislature divided what had been first-degree sexual abuse into first- and second-degree sexual abuse and reclassified what had been second-degree sexual abuse as third-degree sexual abuse. *See* Or Laws 1991, ch 830, §§ 1-3.

abuse statutes on the 1983 legislature's understanding of the phrase "does not consent."

## I. THE CONTEXT OF THE 1983 AMENDMENT

The context for interpreting a statute's text includes "the preexisting common law and the statutory framework within which the law was enacted." *[Klamath Irrigation District v. United States](link)*, 348 Or 15, 23, 227 P3d 1145 (2010) (internal quotation marks omitted). In this case, that context consists of the role that consent has played in defining sexual offenses before 1971, in the 1971 Criminal Code, and in the 1979 amendment to the second-degree sexual abuse statute.

### A.  *Cases Before 1971*

Before 1971, the issue of consent in sex crimes arose primarily, if not exclusively, in interpreting the crime of rape.[3] From 1843 until 1969, the Oregon statute prohibiting rape provided, with variations not material here, that "[a]ny person over the age of 16 years who carnally knows any female child under the age of 16 years, or any person who forcibly ravishes any female, is guilty of rape[.]" *See former* ORS 163.210 (1969); *cf.* General Laws of Oregon, Crim Code, ch II, § 525, p 408 (Deady & Lane 1843-1872) (defining rape in essentially the same way). Under that statute, sexual intercourse constituted rape in two circumstances: (1) if the defendant "forcibly ravishe[d]" the victim or (2) if the victim lacked the capacity to consent because of age.

Textually, the pre-1971 rape statute did not require a lack of consent if the state sought to prove that the defendant had "forcibly ravishe[d]" the victim. The Oregon courts, however, read a consent requirement into the statute; they required the state to prove that the "act [had] been committed forcibly and without the consent of the woman." *State v. Risen*, 192 Or 557, 560, 235 P2d 764 (1951); *accord State v. Gilson*, 113 Or 202, 206, 232 P 621 (1925).

---

[3]  Before 1971, the legislature prohibited sodomy but made that class of sexual acts criminal without regard to the victim's consent. *See former* ORS 167.040 (1969); Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report § 105 (July 1970). Also, there was no analogue to the current sexual abuse statutes before 1971. As a result, before 1971, the issue of consent in sex crimes arose primarily in connection with the rape statute.

More specifically, the state had to show that the victim had met the defendant's force with genuine resistance. *See Risen*, 192 Or at 560 (reasoning that "mere words" were not sufficient to establish resistance; rather, resistance "must be reasonably proportionate to [the victim's] strength and \*\*\* opportunities"). If the state failed to prove genuine resistance at any point during the act, then the jury could infer that the victim had consented to it and that no rape had occurred. *Id.* at 561.

Before 1971, the Oregon courts viewed an allegation that the victim lacked the capacity to consent because of the victim's age as equivalent to an allegation that the defendant had forced himself on the victim without her consent. *See State v. Lee*, 33 Or 506, 510, 56 P 415 (1899) (treating those allegations as equivalent); *State v. Horne*, 20 Or 485, 486, 26 P 665 (1891) (holding that allegations regarding forcible compulsion were surplusage because the indictment alleged that the defendant had sexual intercourse with a victim under the age of consent). It follows that, before 1971, a lack of actual consent and a lack of the capacity to consent were equivalent ways of showing that the victim did not consent. *See* Wayne R. LaFave and Austin W. Scott, Jr., *Handbook on Criminal Law* § 57, 408 (1972) (describing those two ways of proving that the victim had not consented as equivalent).

B.  *The 1971 Criminal Code*

In 1971, the Oregon legislature undertook a comprehensive revision of the criminal code. Among other things, it revised the definition of rape, made consent a defense to sodomy, and added a new crime, sexual abuse.[4] *See* Or Laws 1971, ch 743, §§ 109-116. The legislature also defined generally when a person will be "considered incapable of consenting to a sexual act." *Id.* § 105. That definition both codified and refined the existing law. It provided that "[a] person is considered incapable of consenting to a sexual act if [the person] is: (1) [u]nder 18 years of age; or (2) [m]entally defective; or (3) [m]entally incapacitated; or (4) [p]hysically helpless." *Id.*; *see* Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft

---

[4] Sexual abuse, as defined in the 1971 Criminal Code, prohibited certain instances of nonconsensual sexual contact. Or Laws 1971, ch 743, §§ 115-116.

and Report § 105 (July 1970) (explaining the sources of that definition).

The 1971 Criminal Code retained the understanding of consent that had preceded it. For the purposes of sex crimes, a victim who lacked the capacity to consent stood in the same position as a victim who did not actually consent. *See* Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report § 105 (July 1970). In defining when a person lacks the capacity to consent, the drafters of the 1971 code explained that "[l]ack of consent is the common denominator for all the crimes proscribed in this article [defining sexual crimes]." *Id.* They added that,

> "[g]enerally speaking, a sexual act is committed upon a person 'without his [or her] consent' in the following instances: (1) when the victim is forcibly compelled to submit; (2) when the victim is considered to be incapable of consenting as a matter of law; and (3) when the victim does not acquiesce in the actor's conduct."

*Id.* The drafters of the 1971 code thus viewed those three situations as alternative ways of proving the same thing—a lack of consent.

That proposition is perhaps most evident in the definition of second-degree sexual abuse in the 1971 code.[5] In defining that crime, the 1971 legislature used the phrase "does not consent" to refer to both the lack of actual consent and the lack of the capacity to consent. Specifically, section 115(1) of the 1971 code provided,

> "A person commits the crime of sexual abuse in the second degree if he subjects another person to sexual contact; and
>
> "(a)   The victim does not consent to the sexual contact; or
>
> "(b   The victim is incapable of consent by reason of being mentally defective, mentally incapacitated or physically helpless."

Or Laws 1971, ch 743, § 115(1). At first blush, it appears that the legislature intended to distinguish between the

---

[5] What the legislature classified as second-degree sexual abuse in 1971 was later reclassified (and is currently classified) as third-degree sexual abuse.

lack of actual consent in paragraph (a) and specified types of the lack of capacity to consent in paragraph (b). However, a defense to the crime of second-degree sexual abuse made clear that the statutory phrase "does not consent" in paragraph (a) also referred to the lack of capacity to consent due to age.

Specifically, section 115(2) provided a defense to the crime of second-degree sexual abuse if "the victim's lack of consent was due solely to incapacity to consent by reason of being under 18 years of age[.]" Or Laws 1971, ch 743, § 115(2).[6] In that circumstance, if the victim was more than 14 years old and the defendant was less than four years older than the victim, then the defendant was not guilty of second-degree sexual abuse. *Id*. That defense necessarily rested on the premise that the phrase "does not consent" in paragraph (a) of the 1971 second-degree sexual abuse statute included "the victim's *** incapacity to consent by reason of being under 18 years of age[.]"[7]

One other point is worth noting about the 1971 Criminal Code. The 1971 legislature departed from the earlier statutory definition of rape by creating degrees of that crime, which it distinguished primarily by the circumstances evidencing a lack of consent. For instance, the 1971 legislature defined first-degree rape, in part, as sexual intercourse when "(a) [t]he [victim] is subjected to forcible compulsion by the [defendant]; or (b) [t]he [victim] is under 12 years of age[.]" Or Laws 1971, ch 743, § 111(1). It defined second-degree rape as sexual intercourse when the victim either is "incapable of consent by reason of mental defect, mental incapacitation or physical helplessness" or is "under 14 years of age." *Id*. § 110(1). Finally, it defined

---

[6] The legislature also provided a slightly different age-related defense for second- and third-degree rape and second- and third-degree sodomy. Or Laws 1971, ch 743, § 108. That defense is codified as ORS 163.345.

[7] The legislative history is consistent with the text of the 1971 second-degree sexual abuse statute. The commentary to section 115(2) provided,

"The purpose of this defense is to exclude from criminal sanction certain activity by adolescents, *e.g.*, the 'petting party' between a 14, 15 or 16 year old 'victim' and another young though criminally responsible person of slightly greater age. The age of criminal responsibility is 14 in the proposed Code."

Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report § 115(2) (July 1970).

third-degree rape as sexual intercourse when the victim is under 16 years of age. *Id.* § 109(1). The 1971 legislature accordingly identified different circumstances that evidenced a lack of consent, not to distinguish the lack of actual consent from the lack of the capacity to consent, but to distinguish different degrees of a crime, all of which were premised on a lack of consent however evidenced.[8]

C.  *The 1979 Amendment to Second-Degree Sexual Abuse*

In 1979, the Oregon Court of Appeals rejected an argument that the phrase "does not consent" in the 1971 second-degree sexual abuse statute referred only to actual consent. *See State v. Landino*, 38 Or App 447, 590 P2d 737, *rev den*, 286 Or 449 (1979). The defendant in that case had noted that second-degree sexual abuse, as defined in the 1971 code, prohibited sexual contact if, as paragraph (a) of that statute provided, the victim "does not consent" or, as paragraph (b) provided, the victim "is incapable of consent by reason of being mentally defective, mentally incapacitated or physically helpless." He reasoned that, because the legislature had identified specific bases for the lack of capacity to consent in paragraph (b), the phrase "does not consent" in paragraph (a) referred only to a lack of actual consent. The Court of Appeals disagreed, reasoning,

> "[W]e construe ORS 163.415(1)(a) [(1971)] to apply whether there is nonconsent in fact or as a result of incapacity resulting from any of the four conditions listed in ORS 163.315 [the statute defining when a person lacks the capacity to consent]. The listing of three of those circumstances in subsection (1)(b) is redundant."

*Id.* at 451. The Court of Appeals accordingly held that, because a person under the age of 18 lacks the capacity to consent, *see* ORS 163.315, that person "does not consent" within the meaning of the 1971 second-degree sexual abuse statute. *Landino*, 38 Or App at 451.

After the Court of Appeals issued its decision and while the defendant's petition for review was pending in

---

[8] The 1971 legislature also made the lack of consent an element of sodomy and defined degrees of that crime that distinguished, as the legislature had done for the crime of rape, among the different degrees of sodomy primarily on the circumstances evidencing a lack of consent. *See* Or Laws 1971, ch 743, §§ 112-114.

this court, the City of Springfield asked the legislature to "validate the Court of Appeals interpretation" in *Landino* by amending the second-degree sexual abuse statute to specify that a lack of consent could be based on the victim's age. *See* Minutes, House Committee on Judiciary, HB 2559, May 8, 1979, 2 (explaining the reason for the requested amendment). The specific means that the city proposed (and that the legislature ultimately enacted) of "validat[ing]" the Court of Appeals decision was to add the victim's age to paragraph (b) of the second-degree sexual abuse statute as another basis for the victim's being "incapable of consent." *See id.*

Judged solely by its text, the 1979 amendment cut against rather than validated the Court of Appeals' reasoning in *Landino*. Adding the victim's age to paragraph (b) of the 1971 second-degree sexual abuse statute implied that paragraph (b) defined those instances in which a person lacked the capacity to consent (age and mental and physical incapacity). It also implied that the phrase "does not consent" in paragraph (a) was limited to the lack of actual consent, contrary to the reasoning in *Landino*.

The legislative history of the 1979 amendment looks in a different direction and is consistent with an intent to adhere to the Court of Appeals' reasoning in *Landino*. *See Goodyear Tire & Rubber Co. v. Tualatin Tire & Auto*, 322 Or 406, 415-16, 908 P2d 300 (1995) (considering the legislative history of related statutes as context), *modified on recons*, 325 Or 46, 932 P2d 1141(1997). In discussing the proposed amendment, a member of the House Committee on Judiciary expressed concern that amending paragraph (b) to include age as a basis for the victim's incapacity to consent would "confir[m] that this was not [currently] in the statute." Minutes, House Committee on Judiciary, HB 2559, May 8, 1979, 3. Another member replied that "he isn't sure that [the proposed bill would require] that construction especially if the committee record is clear enough on the point." *Id*. After that discussion, the committee approved the bill and sent it to the House with a "do pass" recommendation. *Id*.

When the bill reached the Senate, some members of the Senate Committee on Judiciary described the proposed

amendment as a "technical" one that would make explicit what the statute already implied—that a person who lacks the capacity to consent due to age "does not consent." *See* Minutes, Senate Committee on Judiciary, HB 2559, May 31, 1979, 5-6. At a later hearing, one senator explained that the second-degree sexual abuse statute, as it then existed, applied to victims who were between 14 and 18 years of age but did not apply to anyone under 14 years of age. Minutes, Senate Committee on Judiciary, HB 2559, June 20, 1979, 9.[9] He reasoned that the amendment was necessary to prohibit sexual contact with victims younger than 14 years of age. *Id.* With that explanation, the Senate committee approved the amendment and sent it to the Senate with a "do pass" recommendation. *Id.* The history of the 1979 amendment suggests that the legislature understood that the phrase "does not consent" referred to the lack of capacity to consent, as well as to the lack of actual consent. In that respect, the history and the text of the 1979 amendment provide differing perspectives on the meaning of the 1983 amendment.

## II.   THE 1983 AMENDMENT

In 1983, the legislature enacted what is now codified as ORS 163.425. *See* Or Laws 1983, ch 564, § 1. As initially passed, the 1983 amendment did not create a stand-alone crime; rather, it provided an additional ground for committing first-degree sexual abuse. *Id.* As amended in 1983, the first-degree sexual abuse statute provided,

"A person commits the crime of sexual abuse in the first degree when that person:

"(a)   Subjects another person to sexual contact; and

"(A)   The victim is less than 12 years of age; or

"(B)   The victim is subjected to forcible compulsion by the actor; **or**

"**(b)   Subjects another person to sexual intercourse** *** **and the victim does not consent thereto.**"

*Id.* (boldface text added in 1983). In 1983, first-degree sexual abuse was a Class C felony. *Id.*

---

[9] The senator apparently viewed the phrase "does not consent" as referring to those victims who did not actually consent and also to those victims to whom the affirmative defense applied (victims between 14 and 18 years of age).

In determining the 1983 legislature's intent in using the phrase "does not consent," we begin with the text of that amendment. Defendant argues that the legislature's use of the auxiliary verb "does" rather than "can" or "cannot" shows that the phrase does not refer to a victim's lack of capacity to consent. He reasons that the phrase "does not consent" refers to an act that the actor is capable of performing; it does not refer to an act that the actor lacks the capacity to perform. Although that is a plausible interpretation of the text, it is not the only plausible interpretation.

As a general matter, the verb "consent" means "to express a willingness (as to accept a proposition or carry out a particular action) **:** give assent or approval **:** AGREE[.]" *Webster's Third New Int'l Dictionary* 482 (unabridged ed 2002). A person who is incapable of giving consent stands in the same position as one who elects not to give it; in each case, the person "does not consent." We cannot find in the text of the 1983 amendment a definitive answer to the question whether "does not consent" is limited to persons who have the capacity to consent, as defendant argues, or whether it also includes persons who lack the capacity to consent, as the state argues.

The context provides additional insight, but the answer that the context suggests varies depending on the context on which one focuses. The 1971 Criminal Code and the cases that preceded it clearly point in favor of the state's interpretation of the phrase "does not consent." Both this court's decisions before 1971 and the 1971 Criminal Code viewed the lack of capacity to consent and lack of actual consent as equivalent. Indeed, as discussed above, the 1971 legislature used the phrase "does not consent" in the second-degree sexual abuse statute to refer both to a victim who does not actually consent and also to a victim who does not consent because the victim is underage. Read in light of that context, the phrase "does not consent" in the 1983 amendment refers to the lack of the capacity to consent as well as the lack of actual consent.

The text of the 1979 amendment to the second-degree sexual abuse statute points in a different direction. As explained above, the 1979 legislature amended paragraph (b) of the second-degree sexual abuse statute

to list age as one reason why a victim lacks the capacity to consent. As a result of that amendment, the text of the second-degree sexual abuse statute implied that the phrase "does not consent" in paragraph (a) of that statute referred only to a lack of actual consent. However, as also explained above, the history of the 1979 amendment points in the other direction. One aspect of the 1979 amendment thus supports defendant while another supports the state.

An additional contextual clue provides support for defendant's position. In 1983, sexual intercourse with a person under 16 years of age constituted third-degree rape and was a Class C felony. ORS 163.355 (1983). Sexual intercourse with a person under 18 years of age constituted contributing to the sexual delinquency of a minor and was a Class A misdemeanor. ORS 163.435 (1983). If, as the state argues, the phrase "does not consent" in the 1983 amendment referred to the victim's lack of capacity to consent because of age, then the 1983 amendment would impose the same punishment for engaging in sexual intercourse with a person under the age of 18 that third-degree rape imposed on engaging in sexual intercourse with a person under 16.[10]

Additionally, if the state's interpretation of the 1983 amendment were correct, then that amendment would prohibit the same conduct (sexual intercourse with a person under 18 years of age) that the crime of contributing to the sexual delinquency of a minor did, but the two crimes would impose different penalties.[11] To be sure, nothing prevents the legislature from enacting duplicative or overlapping statutes, but we ordinarily hesitate to attribute that intent to the legislature. At a minimum, that context causes us to question whether the 1983 legislature departed from the understanding of "does not consent" expressed in the 1971 Criminal Code and adopted instead the meaning of "does not consent" suggested by the text of the 1979 amendment to second-degree sexual abuse.

_____

[10] In 1983, both third-degree rape and first-degree sexual abuse were Class C felonies. *See* ORS 163.355 (1983) (third-degree rape); ORS 163.425 (1983) (first-degree sexual abuse).

[11] In 1983, first-degree sexual abuse was a Class C felony while contributing to the sexual delinquency of a minor was a Class A misdemeanor. *See* ORS 163.435 (contributing to the sexual delinquency of a minor).

Although the text and context of the 1983 amendment do not point in a single direction, the legislative history of that amendment provides stronger support for defendant's position. Briefly stated, the legislative history shows that the sponsors of Senate Bill (SB) 483, the bill that became the 1983 amendment to first-degree sexual abuse, sought to fill a gap that existed when a defendant had engaged in sexual intercourse without the victim's consent but the state could not prove forcible compulsion.[12] Tape Recording, House Committee on Judiciary, SB 483, June 30, 1983, Tape 485, Side A (statement of Peter Sandrock). Peter Sandrock, one of the proponents of the bill,[13] told the committee that, in that circumstance, the jury should acquit the defendant of first-degree rape (a Class A felony) and convict the defendant of second-degree sexual abuse (a Class A misdemeanor). *See id.* He explained that, to fill that gap, SB 483 added a new ground for proving first-degree sexual abuse (a Class C felony); specifically, it criminalized sexual intercourse without the victim's consent. *Id.*

Sandrock told the committee that, in addition to reaching those instances in which the state had proved that the victim had not consented but had not proved forcible compulsion,

> "We're probably reaching the sort of behavior * * * in many cases of someone who abuses a position of authority to enter into sexual intercourse with someone. I can think, for example of the, the rogue cop who takes roadside bail, so to speak. The victim does not consent to the intercourse having been pulled over for some alleged traffic violation, but she is not subjected to any form of forcible compulsion. The officer does not threaten her with a gun, there are no implied threats. It is merely his position that causes her to succumb to the intercourse. The employer situation in which the victim communicates [a] lack of consent, but is not subjected to any form of forcible compulsion."

*Id*.

---

[12] Except as noted below, the discussions of SB 483 in both the House and Senate committees were essentially the same. Rather than repeat those discussions, we have focused on the discussions before the House Committee on Judiciary.

[13] Sandrock was the district attorney for Benton County and took the lead in both the House and Senate hearings in explaining why the bill was necessary and what it would cover.

Sandrock observed that the bill did not define the phrase "does not consent." *Id.* at Tape 486, Side A. He explained, however, that "there has been no problem prosecuting cases of sex abuse in the second degree when the jury has been either given a dictionary definition or been told to figure out what no consent means." *Id.* He told the House Committee on Judiciary that he and a representative of the defense bar had agreed on a definition of "without consent," although he thought that no definition was necessary. When asked what the agreed-upon definition was, Sandrock testified,

> "'Does not consent' means that a person did not presently and voluntarily agree by word or conduct to engage in the sexual contact at issue and that the defendant knew at the time of the sexual contact that the person did not so agree."

*Id.*

When asked why the Senate had not included that definition in SB 483, Sandrock speculated that it "may have been overlooked." *Id.* At that point, Senator Hendrickson[14] told the House committee that, among other things, the Senate had viewed the definition as redundant. *Id.* She explained that, as one of the sponsors of the bill, she had no objection to the definition but thought it unnecessary. *Id.* She also noted that adding the definition to SB 483 would require the Senate to concur in the amendment and expressed a concern that amending the bill at that stage of the legislative session might derail the bill's enactment. With that discussion, the House Committee on Judiciary approved SB 483 without adding the definition of "does not consent" and sent the bill to the House with a "do pass" resolution. The House passed the bill, as the Senate had.

In large part, the legislative history supports defendant's interpretation of the phrase "does not consent." When asked what the phrase meant, Sandrock defined it as meaning the lack of actual consent.[15] Similarly, in describing

---

[14] Senator Hendrickson had sponsored the bill and appeared with Sandrock before the House committee in support of it.

[15] Ordinarily, the failure to enact legislation, such as a proposed definition, does not provide persuasive evidence of the legislature's intent. *Berry v. Branner*, 245

the "sort of behavior" that the bill would reach, Sandrock identified situations in which the victim did not actually consent but there was no forcible compulsion. Finally, in explaining the problem the bill sought to remedy, Sandrock told both committees that the bill filled a gap in the statutes when the state could not prove forcible compulsion but could prove that the victim had not consented. The absence of consent to which Sandrock referred was the absence of actual consent, not the lack of capacity to consent.[16]

The legislative history does not all look in one direction, however. When the bill was in front of the Senate Committee on Judiciary, the counsel for the Senate committee explained that there was no need to define the phrase "does not consent" because that phrase was a "term of art" that had been construed in the context of the second-degree sexual abuse statute. *See* Tape Recording, Senate Committee on Judiciary, SB 483, June 7, 1983, Tape 189, Side B (statement of Nina Johnson). As of 1983, only one appellate decision, *State v. Landino*, had interpreted the phrase "does not consent" in the second-degree sexual abuse statute. As noted, the Court of Appeals had held in *Landino* that the phrase "does not consent" refers to the lack of capacity to consent due to age as well as to the lack of actual consent. It is possible to infer from counsel's explanation that the 1983 legislature declined to enact the proposed definition of "does not consent" because it found *Landino*'s interpretation of that phrase sufficient. That inference, however, runs counter to the rest of the legislative history of the 1983 amendment.

---

Or 307, 311, 421 P2d 996 (1966). In this case, however, SB 483 contained a phase "does not consent" that the legislature did enact and Sandrock told the legislature what that phrase meant. In these circumstances, Sandrock's explanation of the phrase's meaning bears on the legislature's intent.

[16] Additionally, Sandrock told the Senate Committee on Judiciary that "[t]he reference to 'the victim does not consent' [in SB 483] does not include a lack of capacity to consent—those situations in which the [victim] lacks the capacity to consent to a sexual act are defined elsewhere in the rape code." Tape Recording, Senate Committee on Judiciary, SB 483, Apr 7, 1983, Tape 85, Side B. As the Court of Appeals explained in *Stamper*, that statement is ambiguous. *See* 197 Or App at 424. On the one hand, Sandrock said that the phrase "does not consent" does not include a lack of capacity to consent. On the other hand, he qualified that statement by noting that a victim's lack of capacity to consent was defined elsewhere, suggesting that those definitions might bear on the absence of consent.

The text, context, and history of the 1983 amendment permit different inferences regarding the legislature's intent in enacting the phrase "does not consent." The legislative history of the amendment provides the greatest support for defendant's position, but the text and context provide conflicting signals. We conclude that we need not resolve those conflicting signals to decide this case. Even if the 1983 legislature understood that the phrase "does not consent" refers only to the lack of actual consent, the legislature amended the sexual abuse statutes again in 1991. As explained below, we conclude that the 1991 legislature understood, as the 1971 legislature had, that the phrase "does not consent" refers to the lack of the capacity to consent due to age, as well as the lack of actual consent. As we also explain below, the 1991 legislature's enactment is the last word on the subject and, as such, is dispositive.

## III.   THE 1991 AMENDMENT

In 1991, the legislature enacted a bill that focused on the crime of sexual abuse and made essentially two changes to that crime. *See* Or Laws 1991, ch 830. The first change was to divide the two degrees of sexual abuse into three degrees of that crime.[17] As a result of the 1991 amendment, what had been second-degree sexual abuse became third-degree sexual abuse. *Id.* § 1. The amendment also modified the crime of first-degree sexual abuse by reclassifying the 1983 amendment (which had provided one way of proving first-degree sexual abuse) as second-degree sexual abuse. *Id.* § 2. Finally, the amendment modified the remaining elements of first-degree sexual abuse. *Id.* § 3.[18]

The second change to the crime of sexual abuse involved the defenses to that crime. Before 1991, the legislature had provided an age-related defense to what was

---

[17] The amendment also made conforming changes in related laws. *See* Or Laws 1991, ch 830, §§ 5-8. Additionally, it directed the Oregon Criminal Justice Council to report on "the general profile of sex offenders by offense and the types of sentences being imposed for each offense." *Id.* § 10.

[18] The 1991 amendment provided that subjecting a victim under 14 years of age (as opposed to under 12 years of age) to sexual contact constituted first-degree sexual abuse. Or Laws 1991, ch 830, § 3. It also added a new ground for first-degree sexual abuse, intentionally causing a person under 18 years of age to touch certain parts of an animal for sexual purposes. *Id.*

then second-degree sexual abuse but had not provided a similar defense to the crime of first-degree sexual abuse. *See* ORS 163.415 (1989) (former second-degree sexual abuse); ORS 163.425 (1989) (former first-degree sexual abuse). The 1991 amendment repealed the age-related defense that was specific to second-degree sexual abuse and provided an age-related defense for the reclassified crimes of first-, second-, and third-degree sexual abuse. Or Laws 1991, ch 830, §§ 1, 4. Specifically, the 1991 legislature amended ORS 163.345 to provide,

> "In any prosecution under ORS 163.355, 163.365, 163.385, 163.395, **163.415** [third-degree sexual abuse], **163.425** [second-degree sexual abuse], **or section 3 of this 1991 Act** [first-degree sexual abuse] in which the victim's lack of consent was due solely to incapacity to consent by reason of being less than a specified age, it is a defense that the actor was less than three years older than the victim at the time of the alleged offense."

*See id.* § 4 (boldface text added by 1991 amendment).

Read together, sections two and four of the 1991 amendment provide that, when a defendant is charged with engaging in sexual intercourse with a victim who "does not consent" and "the victim's lack of consent was due solely to incapacity to consent by reason of being less than a specified age, it is a defense that the actor was under three years older than the victim at the time of the alleged offense." Only one conclusion can be drawn from the text of those two sections: The 1991 legislature understood that the phrase "does not consent" in the crime of second-degree sexual abuse refers to a victim whose "lack of consent was due solely to incapacity to consent by reason of being less than a specified age" as well as to a victim who does not actually consent.[19] Otherwise, the legislature's decision to provide an age-related defense to the newly reclassified crime of second-degree sexual abuse would serve no purpose. *See State v. Cloutier*, 351 Or 68, 98,

---

[19] The age-related defense to second-degree sexual abuse in the 1991 amendment evidences the legislature's intent in precisely the same way that the age-related defense to second-degree sexual abuse did in the 1971 Criminal Code. Both defenses make clear that the phrase "does not consent" is not limited to situations in which the victim does not actually consent but also includes situations in which the lack of consent results from the victim's age.

261 P3d 1234 (2011) (observing that "an interpretation that renders a statutory provision meaningless should give us pause").

The legislative history of the 1991 amendment demonstrates that the legislature purposefully provided an age-related defense to ORS 163.425. As initially proposed, House Bill (HB) 2542, the bill that became the 1991 amendment, divided the two degrees of sexual abuse into three degrees of that crime and made conforming changes in related laws. *See* HB 2542 (Jan 31, 1991). That version of the bill retained the age-related defense for what became third-degree sexual abuse but did not provide an age-related defense for the newly reclassified crimes of first- and second-degree sexual abuse. *Id.* At a work session on the bill, the members of the House Subcommittee on Crime and Corrections considered extending the defense to third-degree sexual abuse to the other degrees of that crime but did not do so. *See* Tape Recording, HB 2542, House Committee on Judiciary, Subcommittee on Crime and Corrections, Feb 19, 1991, Tape 27, Side B. Accordingly, HB 2542, as it passed out of the House, provided an age-related defense only for third-degree sexual abuse. *See* HB 2542 (A-Engrossed).

When the Senate Committee on Judiciary considered the bill, an amendment was proposed that repealed the age-related defense to third-degree sexual abuse and made the slightly different age-related defense in ORS 163.345 applicable to all three degrees of sexual abuse.[20] Counsel for the Senate committee explained:

> "Under existing law, it is a defense to the misdemeanor abuse offense that the victim was less than four years younger than the perpetrator and was more than 14 years old. No similar provision applies to abuse in the second degree as created by this measure, even though that defense is available for rape in the second and third degrees and for sodomy in the second and third degrees. So, for the purposes of consistency, an amendment was prepared and included here that would apply that three-year age

---

[20] Initially, the age-related defense applied to persons who were no more than four years older than the victim. Or Laws 1971, ch 743, § 115(2). As modified in 1991, it applied to persons who were no more than three years older than the victim. Or Laws 1991, ch 830, § 4.

difference defense [in the statute providing an age-related defense for rape and sodomy] to both abuse 3 under the new scheme and abuse 2. So, it actually—with respect to [the crime of third-degree sexual abuse], it would change [the existing defense] from four to three years, but otherwise expand it and make it applicable to persons charged with both offenses."

Tape Recording, Senate Committee on Judiciary, HB 2542, June 10, 1991, Tape 224, Side A (statement of Ingrid Swenson).[21] A representative from the Oregon State Sheriffs' Association expressed his agreement with the amendment, and the committee voted to send the bill, as amended, to the Senate with a "do pass" recommendation. *Id.* The Senate passed the bill, as amended.

Because the House and Senate versions of the bill differed, a conference committee was convened to reconcile the two versions of the bill. The first difference that the committee discussed was the extension of an age-related defense to first- and second-degree sexual abuse. *See* Tape Recording, Conference Committee, HB 2542, June 28, 1991, Tape 1, Side A (statement of committee counsel Holly Robinson). After the counsel for the Conference Committee identified how the two versions differed, Representative Johnson explained his understanding of the difference:

"What you're saying is that [the Senate] expanded the concept that, if you're within a certain number of years of the other person, it's not the same illegal act *** that it might be if you were 20 years older."

*Id.* (statement of Representative Johnson). He added that the bill, as amended in the Senate, expanded the defense to both first-degree sexual abuse and "what's now sex abuse in the second degree." After Representative Johnson spoke, the other representatives from the House said that they had "no problem with that" change. *Id.* (statements of Representatives Mannix and Sunseri). With that discussion, the House concurred in the Senate amendment. *Id.*

---

[21] Counsel's explanation is not completely consistent with the text of the proposed amendment. The proposed amendment made the defense applicable to all three degrees of sexual abuse.

The legislative history of the 1991 amendment demonstrates that the legislature purposefully chose to provide an age-related defense for the newly reclassified crimes of first-, second-, and third-degree sexual abuse. Not only does that follow from the Senate Judiciary committee's discussion of the amendment, but the Conference Committee concurred in the Senate version of HB 2542. In so doing, the members of the Conference Committee expressly recognized that extending an age-related defense to second-degree sexual abuse would make it legal for persons within a specified age range to engage in acts that would otherwise be illegal—*i.e.*, acts that would otherwise be illegal because the victim was under a specified age. Implicit in that recognition is the proposition that the phrase "does not consent" in the second-degree sexual abuse statute includes instances in which "the victim's lack of consent [i]s due solely to incapacity to consent by reason of being less than a specified age[.]" *See* Or Laws 1991, ch 830, § 4 (making the age-related defense applicable to second-degree sexual abuse).

That proposition is also explicit in the text of sections two and four of the 1991 amendment. As noted, section two of that amendment provides that the crime of second-degree sexual abuse occurs when the victim "does not consent" to sexual intercourse, and section four of that amendment provides a defense "[i]n any prosecution under *** ORS 163.425 *** in which the victim's lack of consent was due solely to incapacity to consent by reason of being less than a specified age[.]" Or Laws 1991, ch 830, §§ 2, 4. The defense that the legislature provided to ORS 163.425 rests explicitly on the proposition that a victim's lack of consent may, in some prosecutions under ORS 163.425, derive from the victim's lack of capacity to consent due to age. That defense is integrally connected to the elements of ORS 163.425 and informs their meaning. *Cf. Wetherell v. Douglas County*, 342 Or 666, 678, 160 P3d 614 (2007) (explaining that we should not look at one subsection of a statute in a vacuum but should construe "each part together with the other parts in an attempt to produce a harmonious whole").

Defendant advances three contrary arguments. He argues initially that the 1991 legislature's intent is not relevant to determining what a phrase enacted in 1983 means. This is not a case, however, in which a subsequent legislature merely expressed its opinion about the meaning of a previously enacted statute. *Cf. DeFazio v. WPPSS*, 296 Or 550, 561, 679 P2d 1316 (1984) (explaining that "[t]he views legislators have of existing law may shed light on a new enactment, but it is of no weight in interpreting a law enacted by their predecessors").[22] Nor is it a case in which legislative inaction is invoked to determine the meaning of an earlier statute. *Cf. Holcomb v. Sunderland*, 321 Or 99, 105, 894 P2d 457 (1995) (explaining that subsequent legislative inaction did not provide a basis for determining an earlier legislature's intent). Rather, this is a case is which the 1991 amendment added a defense to the crime of second-degree sexual abuse that, as a matter of the statute's text and legislative history, rests on the proposition that "does not consent" in ORS 163.425 includes instances "in which the victim's lack of consent was due solely to incapacity to consent by reason of being less than a specified age[.]" Or Laws 1991, ch 830, § 4. *Cf. Fifth Avenue Corp. v. Washington Co.*, 282 Or 591, 597-98, 581 P2d 50 (1978) (recognizing that amendments that materially change the terms of an earlier statute change the meaning of that statute to the extent that change "is expressly declared or necessarily implied").

This court considered a similar issue in *State v. Swanson*, 351 Or 286, 266 P3d 45 (2011). The question in *Swanson* was whether the definition of the term "crime," which the 1971 legislature enacted as part of a comprehensive revision of the substantive criminal code, changed the meaning of an earlier procedural statute that governed a jury's consideration of lesser-included "crimes."[23] In deciding that issue, this court assumed that, as initially used in the procedural statute, the term "crime" was broader than the

---

[22] Because the later legislation in *DeFazio* did not necessarily change the earlier legislation, the court regarded the later legislation as a later legislature's expression of an opinion about an earlier statute. *See* 296 Or at 561.

[23] The legislature had enacted the procedural statute as part of the Deady Code, more than 100 years before the enactment of the 1971 revision of the substantive criminal code. *Swanson*, 351 Or at 290-91.

definition enacted as part of the 1971 substantive criminal code. *Id.* at 292. The court concluded, however, that the 1971 definition effectively narrowed the term "crime" in the earlier enacted procedural statute. *Id.* at 295-96. That was so even though the legislature had not specifically modified the procedural statute governing the jury's consideration of lesser-included crimes. *Id.* The court reasoned, from the context of the legislature's discussions in amending the procedural code in 1973, that it had intended generally that references to "crime" in the procedural statutes would refer to the 1971 definition of that term. *Id.*

The effect of the 1991 amendment on the meaning of the phrase "does not consent" in the 1983 amendment is more direct than the effect of the 1971 definition of crime was on the earlier enacted procedural statute in *Swanson*. In this case, the 1991 legislature both reclassified the crime of second-degree sexual abuse and, in the same bill, added a defense to that crime that rests on the proposition that the phrase "does not consent" refers to the lack of capacity to consent due to age, as well as to the lack of actual consent. Even if the 1983 legislature had a narrower understanding of the phrase "does not consent," the defense that the 1991 legislature specifically provided to ORS 163.425 informs the meaning of the elements of that offense. *See Wetherell*, 342 Or at 678 (explaining that the various parts of a statute should be construed together). The 1991 amendment is the legislature's last word on the subject and, as such, controls the meaning of the phrase "does not consent" in ORS 163.425.

Defendant suggests, alternatively, that the 1991 legislature may have enacted the defense because it was uncertain whether ORS 163.425 applied to victims who lacked the capacity to consent due to their age. Defendant does not point to anything in the text of the 1991 amendment or its legislative history to support that proposition, nor does any exist. Indeed, the only legislative history that bears on the issue shows that the 1991 legislature enacted the defense to ORS 163.425 because it understood that, for persons within a specified age range, the defense made legal what would otherwise have been illegal due to the victim's age.

Defendant argues finally that "interpreting ORS 163.425 to permit prosecutions based on [a] victim's incapacity to consent *** would create conflict among the different provisions of ORS 163.345 [the statute providing for age-related defenses to various sexual offenses]." In support of that argument, defendant identifies three "conflicts" resulting from adopting the state's interpretation of the phrase "does not consent." He notes initially that ORS 163.345 does not provide an age-related defense to first-degree rape when the victim is under 12 years old. He reasons that, if the state's interpretation of "does not consent" is correct, then a defendant who engages in sexual intercourse with an 11-year-old victim would have a defense to a charge of second-degree sexual abuse but not to a charge of first-degree rape. That apparent anomaly, defendant contends, supports his conclusion that the phrase "does not consent" in ORS 163.425 refers only to the lack of actual consent.

Defendant's argument rests on a misperception of the legislature's classification system for sexual offenses. The age-related defense in ORS 163.345 also applies to second- and third-degree rape, which prohibit respectively sexual intercourse with victims "under" the age of 14 and 16. *See* ORS 163.345 (defense); ORS 163.365 (second-degree rape); ORS 163.355 (third-degree rape). The defense in ORS 163.345 will shield a defendant who engages in sexual intercourse with an 11-year-old victim from a charge of second-degree rape or third-degree rape but not from a charge of first-degree rape.[24] Not only does the "conflict" that defendant perceives apply equally to second- and third-degree rape, which explicitly turn on the victim's lack of capacity to consent due to age, but the answer to that perceived conflict lies in the prosecutor's charging discretion. If a person engages in sexual intercourse with a person under the age of 12, then the prosecutor can charge that crime as first-degree rape. Not only does that charge avoid

[24] When using age as the basis for classifying degrees of sexual offenses, the legislature has provided that persons "under" a specified age lack the capacity to consent—"under 14 years of age," for example, in second-degree rape, or "under 16 years of age" in third-degree rape. *See* ORS 163.365 (second-degree rape); ORS 163.355 (third-degree rape). As a result of that drafting technique, the same act—intercourse with an 11-year-old child—can be charged as first-degree rape, second-degree rape, third-degree rape, and second-degree sexual abuse.

a possible age-related defense, but it is also consistent with the legislature's classification scheme for sexual offenses, which uses the victim's age to distinguish among degrees of a crime.

In our view, interpreting the phrase "does not consent" in the second-degree sexual abuse statute to include the lack of capacity to consent due to the victim's age does not result in a conflict with other sexual offenses, as defendant argues. Rather, it aligns the crime of second-degree sexual abuse with other sexual offenses that the legislature has classified according to the victim's age.[25] Defendant's arguments provide no persuasive reason for saying that the 1991 amendment does not control our resolution of this case. We accordingly conclude that the phrase "does not consent" in ORS 163.425 refers to the victim's lack of capacity to consent due to age, as well as to the lack of actual consent.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

---

[25] We have considered the other two conflicts that defendant has identified and find that they are not persuasive for some of the same reasons that we have discussed above.