Filed:  August 2, 2012

IN THE SUPREME COURT OF THE STATE OF OREGON

STATE OF OREGON,

Respondent on Review,

v.

ALEXANDER DANIEL KLEIN,
aka Alezander Daniel Klein,

Petitioner on Review.

(CC 070331145; CA A139381; SC S059542)

En Banc

On review from the Court of Appeals.*

Argued and submitted January 12, 2012.

Andy Simrin, Andy Simrin PC, Portland, argued the cause and filed the brief for petitioner on review.

Janet A. Klapstein, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review.  With her on the brief were John R. Kroger, Attorney General, and Anna M. Joyce, Solicitor General.

BALMER, C. J.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

*Appeal from Multnomah County Circuit Court, Edward J. Jones, Judge. 243 Or App 1, 258 P3d 528 (2011).

BALMER, C. J.

This case requires us to decide the meaning of "aggrieved person" as that term is used in ORS 133.721(1), the statute that defines the class of persons who may seek suppression of evidence obtained pursuant to an order for a body wire or wiretap. Defendant was charged with various crimes arising from the murder of Asia Bell. Before trial, defendant filed motions to suppress certain evidence intercepted pursuant to a body-wire order and a wiretap order. Specifically, through the body-wire order the police had obtained conversations that referred to defendant and indirectly suggested that he was involved in Bell's death. Based on that information, the police obtained the wiretap order, and, through the wiretap, intercepted conversations in which defendant made incriminating statements. The trial court denied defendant's motions to suppress. A jury convicted defendant of murder, conspiracy to commit murder, and two counts of attempted aggravated murder.

On appeal, the Court of Appeals affirmed. It held that defendant could not challenge the body-wire order because he was not an "aggrieved person" within the meaning of ORS 133.721(1). As to the wiretap order, the Court of Appeals acknowledged that defendant was an "aggrieved person" who could challenge that order, but noted that defendant's only argument to exclude the incriminating communications obtained pursuant to that order was that the order was based on information obtained through the allegedly invalid body-wire order. It rejected that argument. The Court of Appeals also rejected defendant's argument that the trial court committed prejudicial error in excluding certain evidence that defendant sought to introduce. *State v. Klein*, 243 Or

App 1, 258 P3d 528 (2011).  For the reasons that follow, we affirm the decision of the Court of Appeals.

We state the facts in the light most favorable to the state.  *State v. Johnson*, 342 Or 596, 598, 157 P3d 198 (2007).  In 2002, Deprince Hale shot and killed Asia Bell and wounded Bell's husband and a neighbor.  Defendant drove Hale to and from the scene of the crime.  Defendant's girlfriend at the time, Sonja Hutchens, served as a lookout during the shooting.  Defendant and Hale are gang members; the victims were associated with, although not members of, a rival gang.

The police developed few leads in their investigation until 2006, when Hutchens, who then was serving a 10-month jail sentence for an unrelated crime, contacted the prosecutor to offer information about the murder in exchange for an early release.  Hutchens identified Hale as the shooter; she did not identify defendant as the driver, nor did she acknowledge her role as lookout at that time.  Based on the information that Hutchens supplied, the police obtained an order under ORS 133.726, the body-wire statute, to intercept oral communications between Hutchens and Hale by means of a body-wire worn by Hutchens.

Before that order expired, the police applied for a second body-wire order, which is the subject of defendant's challenge.  The application for the order described conversations between Hale and Hutchens that the police had intercepted previously.  The application also stated that Hutchens had failed a lie detector test and had admitted to the police that she had misled them about several important facts regarding the murder.  As relevant here, the application noted that Hutchens had stated that defendant had driven

Hale and several other gang members to the house where the shooting occurred. The application also stated that Hutchens had admitted that she had followed Hale and defendant in a separate vehicle to serve as a lookout.

Although the application for the order mentioned defendant and several other gang members who were present in the vehicle when Hale murdered Bell and shot the other victims, the order did not name defendant or the other gang members. Rather, the order provided:

"The persons whose oral communications are to be recorded are SONJA ELAINE HUTCHENS and DEPRINCE ROMEY HALE and other unknown subjects who may be present during contacts by SONJA ELAINE HUTCHENS with DEPRINCE ROMEY HALE. This order authorizes only the interception of oral communications to which SONJA ELAINE HUTCHENS is a party, which means oral communications that are made in the immediate presence of DEPRINCE ROMEY HALE and are audible to DEPRINCE ROMEY HALE."

Judge Eric Bergstrom signed the order.

Based on the order, the police placed a body-wire on Hutchens and recorded conversations between Hale and Hutchens. Those conversations implicated defendant in the murder. Based in part on those conversations, the police obtained a wiretap order under ORS 133.724, which authorized the interception of communications made by defendant on his mobile phone. Defendant made incriminating statements to Hutchens over his phone, which the police intercepted.

Before trial, defendant filed separate motions to suppress evidence gained from the body-wire order and the wiretap order. As to the body-wire order, defendant alleged that the order was invalid because Judge Bergstrom was not a neutral and

detached magistrate. Defendant asserted that, in 2002, at the time of the murder, Judge Bergstrom had been a deputy district attorney for Multnomah County, and that he had been called to the scene of the murder and had attended the autopsy. Because there were no suspects in the murder investigation until Hutchens came forward in 2006, however, the district attorney's office did not open a file on the case until after Judge Bergstrom had left his position as a prosecutor in 2005. The trial court denied defendant's motion. As to the wiretap order, defendant alleged that evidence gained under that order should be suppressed because the application for the order had relied on evidence gained from the invalid body-wire to establish probable cause. Thus, his argument that the wiretap evidence should be suppressed depended on the court's agreement with his argument that the body-wire evidence was unlawfully obtained and should be suppressed. The trial court denied his second motion as well.

At trial, Hutchens was a witness for the state. Defendant sought to raise questions about Hutchens's credibility through the testimony of Aisha Banks, who had been incarcerated with Hutchens. Banks was prepared to testify that Hutchens told her that she had "made up" information about the shooting in order to get out of jail. The trial court excluded the evidence as cumulative under OEC 613(2) on the ground that Hutchens had already admitted making those statements: Hutchens testified on the stand that she had lied repeatedly to the police and others regarding the events in question, and she admitted telling Banks that she made up "this whole thing" in order to get out of jail.

As noted, the jury found defendant guilty of various crimes related to the murder of Asia Bell. Defendant appealed, arguing that the trial court erred in denying his

motions to suppress and in excluding the proffered testimony of Banks. The Court of Appeals rejected defendant's argument regarding the body-wire order because defendant did not qualify as an "aggrieved person" under ORS 133.721(1) (defining "aggrieved person") and ORS 133.736 (allowing an "aggrieved person" to seek suppression of evidence gained through a body-wire order). The Court of Appeals held that the meaning of "aggrieved person" was unambiguous. As relevant here, the court stated that a defendant is an "aggrieved person" under the statute if the defendant is a party to an intercepted communication or if the defendant is "identified in the order as a person whose oral communications could be intercepted pursuant to the order." *Klein*, 243 Or App at 8. Because defendant here was not a party to the conversations intercepted under the body-wire order and was not named in the order as a person whose communications could be intercepted, defendant had no standing under ORS 133.736 to move to suppress evidence gained under the body-wire order.

Regarding the wiretap order, the court acknowledged that defendant was an "aggrieved person" with respect to that order. *Id*. at 7 n 2. However, the court stated, defendant's only argument was that evidence gathered pursuant to the wiretap order should be suppressed because it was derivative of the body-wire order. The court rejected that challenge. As to the exclusion of Banks's testimony, the Court of Appeals agreed with the defendant that the trial court was incorrect in excluding that testimony under OEC 613(2), but concluded that any error was harmless. *Id*. at 15. On review, the parties reprise the arguments that they made in the Court of Appeals.

We begin with a brief review of the relevant statutory framework. ORS

165.540 prohibits, subject to certain exceptions, the interception of a private conversation unless all parties to the conversation are informed that their conversation is being recorded. Conversations recorded in violation of ORS 165.540 are not admissible in court except as evidence of unlawful interception. ORS 41.910(1). Conversations recorded under ORS 133.724, the wiretap statute, and ORS 133.726, the body-wire statute, are exceptions to the prohibition on interception contained in ORS 165.540. The wiretap statute authorizes a judge to order the interception of "wire, electronic or oral communications," if certain detailed application requirements and procedural safeguards are met. ORS 133.724. The body-wire statute, ORS 133.726, authorizes the interception of oral communications by a police officer or person under the direct supervision of a police officer when that officer or person is a party to the communication. The police may intercept such oral communications with a bodywire if they obtain an *ex parte* court order, although the order requirement may be excused if the investigation involves certain enumerated crimes or if exigent circumstances would make obtaining an order unreasonable. ORS 133.726(7); *see also State v. Miskell/Sinibaldi*, 351 Or 680, 686-89, 277 P3d 522 (2012) (describing body-wire and wiretap statutes in detail). Both the body-wire statute and the wiretap statute require the order authorizing interception to specify the "identity of the person, if known," whose communications are to be intercepted. ORS 133.726(6)(a); ORS 133.724(4)(a).

The legislature has provided a statutory suppression remedy for violations of the body-wire and wiretap statutes. ORS 133.736 provides, in part:

"(1) Any *aggrieved person* in any trial * * * may move to suppress

recordings of any oral communication intercepted in violation of ORS 133.726 [the body-wire statute] or testimony or other evidence derived solely from the unlawful interception."

(Emphasis added.)  Similarly, ORS 133.735 provides, in part:

"(1) Any *aggrieved person* in any trial * * * may move to suppress the contents of any wire, electronic or oral communication intercepted under ORS 133.724 [the wiretap statute], or evidence derived therefrom, on the grounds that:

"(a) The communication was unlawfully intercepted[.]"

(Emphasis added.)  "Aggrieved person" is a defined term:

"'Aggrieved person' means *a person who was a party* to any wire, electronic or oral communication intercepted under ORS 133.724 or 133.726 or *a person against whom the interception was directed* and who alleges that the interception was unlawful."

ORS 133.721(1) (emphasis added).

Defendant argues that ORS 133.736(1) and ORS 133.735(1) authorize him to file a motion to suppress the evidence gained, respectively, under the body-wire order and the subsequent wiretap order because he is an "aggrieved person" under ORS 133.721(1) as to both orders.  The state responds that defendant is not an "aggrieved person" as to the body-wire order and therefore cannot obtain suppression of the body-wire evidence under ORS 133.736(1).  The state agrees that defendant is an aggrieved person as to the *wiretap*, because he is named in the wiretap order and he was a party to conversations obtained under that order.  However, the state argues, defendant's only argument to suppress the wiretap evidence is that the *body-wire* order was invalid and the body-wire evidence therefore could not be used to obtain the wiretap order.  His argument to suppress the wiretap evidence, the state contends, thus depends solely on

whether he can suppress the body-wire evidence. Because defendant's motion to suppress the body-wire evidence fails because he is not an "aggrieved person" as to that order, the state continues, his motion to suppress the wiretap evidence fails as well. As the state observes -- and defendant does not disagree -- the body-wire evidence established probable cause to support issuance of the wiretap order.

Defendant and the state thus agree that defendant qualifies as an "aggrieved person" as to the *wiretap* order, because he was a party to the intercepted communications and also was named in the wiretap order as the person whose communications were to be intercepted. As to the *body-wire* order, the parties agree that defendant was *not* a "party" within the meaning of ORS 133.721(1) to the communications intercepted under that order, because defendant was not present during Hutchens's conversations with Hale. However, defendant argues that he was "a person against whom the interception was directed" under that statute. Accordingly, he asserts, he can obtain suppression of the body-wire evidence and, because that evidence provided the basis for the wiretap order -- and, without it, there would not have been probable cause for the order -- the wiretap evidence must be suppressed as well. Defendant's argument thus turns on the narrow issue of whether, as to the body-wire order, he was "a person against whom the interception was directed." ORS 133.721(1).

We determine the meaning of the phrase "a person against whom the interception was directed" by examining the text and context of the statute -- including related statutes and case law -- and then looking to legislative history as necessary. *See State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009) (outlining methodology). Our

goal is to discern the intent of the legislature, if possible. *Id*. at 165.

Because the legislature wrote the definition of "aggrieved person" in the passive voice -- "a person against whom the interception *was directed*" -- who or what does the "directing" is not explicitly stated in the statute. The key difference between the interpretations offered by defendant and the state involves who or what "directs" the interception. Under defendant's interpretation, the interception is "directed" by the intent of the police as expressed or implied in the application and the proposed order, or by the intent of judge issuing the order. Defendant argues that, if the police "contemplate" that a particular criminal suspect might be recorded under the order, or if the judge "anticipates" that a particular criminal suspect is likely to be recorded, those individuals have standing to challenge the order because they are persons "against whom the interception was directed," even if they are not named in the order and are not among the persons whose conversations were intercepted. The state argues, in response, that the text of the order itself "directs" the interception by naming one or more specific persons in the order; an unnamed person, in the state's view, has standing as an "aggrieved person" to challenge evidence gained through a body-wire only if that person's conversations actually were intercepted.

The text of ORS 133.721(1), read in conjunction with the body-wire statute, supports the state's interpretation of "aggrieved person." The body-wire statute explicitly requires the order authorizing interception to specify "[t]he identity of the person, if known, whose oral communication is to be intercepted." ORS 133.726(6)(a); *see also* ORS 133.724(4)(a) (stating similar requirement for wiretap orders). The body-wire

statute thus requires the order to "direct" the interception effort at the oral communications of a specific person, if possible. We conclude, preliminarily, that the person "against whom the interception was directed" is the person identified in the *order* "whose oral communication is to be intercepted." Defendant's interpretation of "aggrieved person" as including any criminal suspect merely "contemplated" by the police or judge but not named in the order finds no support in the text of the statute.

The legislative history of ORS 133.721 confirms that the interpretation of the statute described above is the correct one. The legislature enacted the definition of "aggrieved person" as part of a 1979 overhaul of Oregon statutes dealing with electronic surveillance that was designed to bring Oregon law into compliance with federal law. *See State v. Lissy*, 304 Or 455, 465, 747 P3d 345 (1987) (so stating). In keeping with that goal, the wording of the relevant statutory provisions closely parallels that of Title III of the Omnibus Crime Control and Safe Streets Act of 1968. Staff Measure Analysis, SB 484 (1979); Minutes, House Committee on Judiciary, SB 484, June 30, 1979, 13. Aside from cross-references to Oregon statutes, the Oregon definition of "aggrieved person" is identical to the federal one. *See* ORS 133.721(1); 18 USC § 2510(11).

We turn briefly to the meaning of the analogous federal definition of "aggrieved person." When the Oregon legislature has modeled a statute on a federal statute, we treat pre-existing United States Supreme Court decisions interpreting the federal statute as indicative of the legislature's intent in adopting the state provision. *Pamplin v. Victoria*, 319 Or 429, 434-35, 877 P2d 1196 (1994). That is the circumstance here. In *Alderman v. United States*, 394 US 165, 175-76 n 9, 89 S Ct 961, 22 L Ed 2d

176 (1969), the United States Supreme Court construed the federal definition of "aggrieved person," stating, "The [Omnibus Crime Control and Safe Streets] Act's legislative history indicates that 'aggrieved person,' [in 18 USC § 2510 (11)], should be construed in accordance with existent standing rules." The Court cited a Senate report which specifically stated that "aggrieved person" was intended to provide a suppression remedy for only those defendants who would have standing to suppress the evidence under existing Fourth Amendment case law. 394 US at 175-76 n 9 (quoting S Rep No 90-1097, 90th Cong, 2d Sess, *reprinted in* 1968 USCCAN 2112, 2184-85). The Court in *Alderman* described federal standing rules under the Fourth Amendment as follows:

> "The established principle is that suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence. Coconspirators and codefendants have been accorded no special standing."

394 US at 171-72. *Alderman*, of course, was decided before the legislature amended Oregon's statutes dealing with electronic surveillance to include the federal definition, and we therefore view that decision as expressing the interpretation of the statute that the legislature intended. Moreover, following *Alderman*, the federal courts have consistently interpreted "aggrieved person" as limiting those who can seek suppression of evidence to persons whom the order named as the target of the electronic eavesdropping, were parties to intercepted conversations, or whose premises were the site of the interception. *See, e.g.*, *United States v. Williams*, 580 F2d 578, 583 (DC Cir 1978) (so stating).

Defendant notes that the Oregon legislative history does not discuss the meaning of "aggrieved person" nor does it discuss Fourth Amendment standing

principles. That assertion is correct, as far as it goes, but does not detract from the more general proposition, articulated in the legislative history, that the legislature intended Oregon law to reflect federal law on the subject of who has standing to challenge the admissibility of evidence obtained pursuant to an order permitting electronic surveillance. Nor does it change the fact that the federal definition that was adopted in the Oregon statute already had been definitively construed by the United States Supreme Court in a manner contrary to defendant's proposed construction. Defendant's proposed definition of "aggrieved person" is contrary to federal law in that it would permit a defendant to challenge evidence obtained through a body-wire or wiretap order even when that defendant had no privacy interest in the intercepted communication under the Fourth Amendment. Simply put, we find no support for defendant's interpretation of "aggrieved person" in the text of the statute, the case law, or the legislative history.

The application of our interpretation of "aggrieved person" to the facts here is straightforward. As noted, the body-wire order stated:

"The persons whose oral communications are to be recorded are SONJA ELAINE HUTCHENS and DEPRINCE ROMEY HALE and other unknown subjects who may be present during contacts by SONJA ELAINE HUTCHENS with DEPRINCE ROMEY HALE. This order authorizes only the interception of oral communications to which SONJA ELAINE HUTCHENS is a party, which means oral communications that are made in the immediate presence of DEPRINCE ROMEY HALE and are audible to DEPRINCE ROMEY HALE."

For defendant to invoke the statutory suppression remedy, he must be an "aggrieved person," either because he was a party to the intercepted communication or was "a person against whom the interception was directed." Defendant acknowledges that he was not a

party to any communication intercepted under the body-wire order. Thus, he may only challenge the order if he was a person "against whom the interception was directed." ORS 133.721(1). The body-wire order, however, identified Hale by name -- not defendant -- as the target of the order and authorized only the recording of conversations that occurred within earshot of Hale and in the presence of Hutchens.

Defendant nevertheless asserts that he was a "person against whom the interception was directed" because he was discussed as a "subject" of the investigation in the body-wire order *application* and the order itself authorized recordation of Hale "and other unknown subjects who may be present during contacts" between Hutchens and Hale. Because he was "expressly contemplated by, though not explicitly named in" the order, defendant asserts, he was a subject of the investigation and thus qualifies as an "aggrieved person."

Defendant is incorrect. As noted, "a person against whom the interception was directed" means a person identified in the order whose communications are to be intercepted. Here, the text of the order itself limits the interception to communications between Hutchens and Hale and communications involving "other unknown subjects *who may be present*" during communications between Hutchens and Hale. Defendant was *not* present at those conversations and thus he is not an "unknown subject" under the order.[1]

---

[1] Before this court, defendant makes an additional argument that, regardless of the meaning of "aggrieved person," suppression of the disputed evidence is required under Oregon statutes dealing generally with the recording of conversations without consent. *See* ORS 41.910; ORS 165.540. Defendant did not raise that argument below

Therefore, the interception was not directed at defendant.

Defendant also asserts that he may challenge the lawfulness of the *body-wire* order because he is an "aggrieved person" as to the *subsequent* wiretap order. That is so, defendant argues, because the police relied upon evidence gained from the body wire to establish probable cause for the wiretap order. The state does not dispute that defendant is an "aggrieved person" with regard to the wiretap order, but argues that his status as to the wiretap order does not permit him to challenge the body-wire order.

Defendant's argument fails because it is inconsistent with the statutory requirement of ORS 133.736(1) that, to seek suppression of the body-wire evidence, defendant must come within the statutory definition of "aggrieved person" set out in ORS 133.721 (1).[2] As discussed in detail above, defendant is not an "aggrieved person" with respect to the body-wire order because he was not a party to the intercepted communications and was not a person "against whom the interception was directed." Nor does defendant have any privacy interest in the conversations recorded on the body wire, because he was not a party to any of those conversations. Accordingly, defendant cannot challenge the body-wire evidence under ORS 133.736(1). Because defendant's challenge to the lawfulness of the *wiretap* order -- that the information on which it was based was obtained unlawfully -- rests entirely on his effort to challenge the body-wire evidence, it

and we decline to address it here.

[2] Defendant makes no state or federal constitutional argument in support of his motion to suppress.

fails.

Turning to defendant's evidentiary challenge, defendant asserts that the Court of Appeals erred by concluding that the trial court's exclusion of Banks's testimony was not prejudicial. The Court of Appeals held that any error by the trial court was harmless because the excluded evidence "would have demonstrated exactly the same thing as the admitted evidence" and, therefore, "its exclusion was unlikely to have affected the verdict." *Klein*, 243 Or App at 15. On review, defendant argues that the Court of Appeals incorrectly applied this court's harmless error standard.

An evidentiary error is harmless if there is little likelihood that the error affected the verdict. *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). Whether the erroneous exclusion of evidence is harmless will depend on the content and character of evidence, as well as the context in which it was offered. Erroneous exclusion of evidence that is "merely cumulative" of admitted evidence and not "qualitatively different" than admitted evidence generally is harmless. *See id*. at 34. Here, the Court of Appeals understated the difference between Banks's and Hutchens's testimony when it stated that Banks's testimony -- that Hutchens fabricated information about the shooting to get out of jail -- would have demonstrated "exactly the same thing" as Hutchens's testimony about those statements. Banks's testimony would have provided a different perspective and a different emphasis than Hutchens's testimony. Nevertheless, because the jury heard the same facts -- the content of Hutchens's statements and that those statements were made in jail to a fellow inmate -- when Hutchens admitted making those statements on the stand, any error in excluding the evidence is unlikely to have affected the jury's verdict. *See id*.

(erroneous exclusion of evidence could have affected the verdict when the excluded evidence demonstrated facts, not otherwise in evidence, that supported defendant's theory of the case).

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.