Submitted February 10, 2015, affirmed April 27, petition for review denied August 25, 2016 (360 Or 237)

**STATE OF OREGON,**
*Plaintiff-Respondent,*

*v.*

**JEREMY WAYNE BERNHARDT,**
*Defendant-Appellant.*

Lane County Circuit Court
211211071; A152817

376 P3d 316

Peter Gartlan, Chief Defender, and Jedediah Peterson, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Michael J. Slauson, Assistant Attorney General, filed the brief for respondent.

Before Sercombe, Presiding Judge, and Hadlock, Chief Judge, and Tookey, Judge.

TOOKEY, J.

## TOOKEY, J.

Defendant appeals a judgment of conviction, following a jury trial, for sexual abuse in the second degree in violation of ORS 163.425.[1] The jury found defendant guilty for knowingly subjecting the minor victim to deviate sexual intercourse without her consent. In his first assignment of error, defendant argues that the trial court erred when it denied his motion for judgment of acquittal because the state failed to prove that the victim did not consent to deviate sexual intercourse. In his second assignment of error, defendant argues that the trial court erred when it denied his requests to argue to the jury that the term "subjects," as used in ORS 163.425, is an element of the crime and requires the state to prove beyond a reasonable doubt that the defendant exerted some control over the victim. We conclude that when an adult, acting with the requisite culpable mental state, has deviate sexual intercourse with a minor who is legally incapable of giving consent, ORS 163.425(1)(a) does not require the state to prove that the adult exerted control over the minor victim or that the minor victim did not actually consent. Accordingly, we affirm.

Defendant's assignments of error present the same legal question—whether the trial court's rulings were based on a proper interpretation of ORS 163.425(1)(a).[2] "A trial court's interpretation of a statute is reviewed for legal error." *State v. Thompson*, 328 Or 248, 256, 971 P2d 879, *cert den*, 527 US 1042 (1999).

We begin with defendant's first assignment of error concerning the trial court's denial of his motion for judgment

---

[1] ORS 163.425(1)(a) provides, in part, that "a person commits the crime of sexual abuse in the second degree when * * * [t]he person subjects another person to * * * deviate sexual intercourse * * * and the victim does not consent thereto." ORS 163.305(1) defines deviate sexual intercourse as "sexual conduct between persons consisting of contact between the sex organs of one person and the mouth or anus of another."

[2] The state argues that defendant's arguments are not preserved. We conclude that defendant's arguments and motions brought to the court's and the state's attention the issue of the proper construction of ORS 163.425(1). *See Peeples v. Lampert*, 345 Or 209, 220, 191 P3d 637 (2008) (noting that "[p]reservation rules are pragmatic as well as prudential," and that "[w]hat is required of a party to adequately present a contention to the trial court can vary depending on the nature of the claim or argument; the touchstone in that regard, ultimately, is procedural fairness to the parties and to the trial court").

of acquittal. After we settle the legal issue of what the element "does not consent" means, we view "the evidence in the light most favorable to the state" to determine whether a "rational trier of fact could have found that the essential elements of the crime had been proved beyond a reasonable doubt." *State v. Paragon*, 195 Or App 265, 267, 97 P3d 691 (2004). In accordance with that standard, "we state the facts in the light most favorable to the state." *State v. Massei*, 247 Or App 30, 32, 268 P3d 774 (2011).

Defendant, who was 29 years old, picked up B, a 16-year-old girl, in his truck and took her to the farthest parking area at the north jetty in Florence, Oregon. After they took a walk on the beach, defendant and B got back into his truck. B took defendant's pants off, performed oral sex on him for "less than 10 minutes," and defendant put his hands down her pants. Defendant had an erection and did not attempt to push B away or tell her to stop when she took his pants off or when she began performing oral sex on him. Defendant was charged with, among other things, one count of sexual abuse in the second degree. At trial, B testified that she had initiated the oral sex and the state introduced no evidence that the deviate sexual intercourse was against B's will.

Defendant moved for judgment of acquittal when the state rested its case and renewed the motion prior to closing arguments, contending that the state had failed to prove the victim did not consent. The trial court denied defendant's motion both times, reasoning that a rational trier of fact could find that the victim did not consent because of her legal incapacity to give actual consent as a minor. As noted above, defendant was subsequently convicted of one count of second-degree sexual abuse. On appeal, defendant reprises the argument he made to the trial court—that the state failed to prove that the minor victim did not consent to deviate sexual intercourse.

Defendant's argument regarding B's consent is foreclosed by *State v. Ofodrinwa*, 353 Or 507, 300 P3d 154 (2013). In *Ofodrinwa*, the Supreme Court construed ORS 163.425 and concluded that the legislature intended the phrase "does not consent" to include sexual conduct with individuals

legally incapable of consent, regardless of whether the conduct actually is against their will. 353 Or at 519 ("A person who is incapable of giving consent stands in the same position as one who elects not to give it; in each case, the person 'does not consent.'"); *see also State v. Stamper*, 197 Or App 413, 427, 106 P3d 172, *rev den*, 339 Or 230 (2005) ("[O]ur best judgment is that the legislature intended the phrase 'the victim does not consent' [in ORS 163.425] to apply either to actual lack of consent or incapacity to consent because the victim was under the age of 18."). In this case, the state presented evidence that B was 16 years old at the time the deviate sexual intercourse occurred. *See* ORS 163.315(1)(a) ("A person is considered incapable of consenting to a sexual act if the person is * * * [u]nder 18 years of age[.]"). We conclude that the trial court did not err when it denied defendant's motion for judgment of acquittal.

We turn to defendant's second assignment of error. As previously noted, defendant argues that the trial court erred when it denied his requests to argue to the jury that the term "subjects," as used in ORS 163.425, is an element of the crime and requires the state to prove beyond a reasonable doubt that defendant exerted some control over the victim. At trial, defendant argued that "'subjects' means to cause to undergo or to submit to. Subrogate. To make oneself amenable to the discipline or control of a superior." Defendant contended that he should be able to argue that the state did not prove that defendant knowingly subjected B to deviate sexual intercourse because defendant did not initiate the deviate sexual intercourse or cause it to happen. The state responded that "the word 'subject' has many different meanings, but the three [the state] want[ed] to highlight to the Court [from the dictionary] here would be * * * [t]o make liable or vulnerable or expose." The state continued, stating that, if "[defendant] presents his erection for her to put her mouth on, that he has facilitated or exposed her [to] * * * that type of activity." The trial court declined defendant's request to argue his interpretation of ORS 163.425 to the jury, stating:

"[W]hat I am stating for the record is that * * * my read of 'knowingly subjected' means simply that * * * he was able to

form the intent to participate, not that he was the aggressor or that he initiated it or that he compelled it.

"* * * * *

"What you cannot do is make any argument to the jury that if she started it, then the State has not proven the case. * * * [Y]ou both made arguments about what 'knowingly subjected' means. And I rejected [defendant's] interpretation and I accepted the state's."

On appeal, defendant contends that the legislature intended the term "subjects" in ORS 163.425(1)(a) to require the state to prove that defendant exerted some control over the victim. Defendant advances two arguments in support of his interpretation. First, he contends that the plain text supports his interpretation, because the word "subjects" connotes control or dominion. Second, he asserts that the context and legislative history of the statute indicate that the legislature distinguished between two types of sex crimes by using the word "subjects" for crimes requiring that a defendant exert dominion or control over a victim, and the term "engages in" for conduct that was not necessarily against the victim's will, but which society nonetheless criminalizes. The state responds that the term "subjects" does not require the state to prove that defendant exerted control over the victim.

The parties' arguments and the trial court's ruling present a question of statutory interpretation, which we review for legal error. *Thompson*, 328 Or at 256 ("A trial court's interpretation of a statute is reviewed for legal error."). In interpreting a statute, we seek to discern the intent of the legislature. "We ascertain the legislature's intentions by examining the text of the statute in its context, along with any relevant legislative history, and, if necessary, canons of construction." *State v. Cloutier*, 351 Or 68, 75, 261 P3d 1234 (2011) (citing *State v. Gaines*, 346 Or 160, 171-73, 206 P3d 1042 (2009)).

We start with the statutory text because it is "the best evidence of the legislature's intent." *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). Defendant contends that the plain text supports his interpretation. Although several terms used in ORS 163.425(1)(a)

are defined in ORS 163.305, the word "subjects" is not among them. It is, however, a word of "common usage," and so we look first to its common understanding. *PGE*, 317 Or at 611 ("[W]ords of common usage typically should be given their plain, natural, and ordinary meaning.").

*Webster's Third New International Dictionary* contains the following relevant definitions for "subject" when used as a verb:

> "**1 a :** to bring under control or dominion **:** SUBJUGATE <~ing primitive peoples to colonial rule> **b :** to reduce to subservience or submission **:** make (as oneself) amenable to the discipline and control of a superior <a servant should ~ himself to his master> * * * **4 :** to cause to undergo or submit to **:** make submit to a particular action or effect **:** EXPOSE <hated to ~ his wife to such company> <unwilling to ~ himself to any inconvenience> [.]"

*Webster's Third New Int'l Dictionary* 2275 (unabridged ed 2002).

Defendant emphasizes the first-listed definition. The first definition appears to support defendant's contention that "subjects" means to assert control over another. That definition also refers to the terms "dominion," "submission," and "subjugate," which connote authority and power over another. Because the victim in this case initiated the sexual conduct willingly, defendant argues, she could not have been "subjected" to the sexual conduct.

The Supreme Court has cautioned that "a dictionary definition * * * should not be relied on to resolve a dispute about plain meaning without critically examining how the definition fits into the context of the statute" because "context may dictate applying one definition rather than another, if the dictionary contains multiple definitions for a relevant term." *State v. Gonzalez-Valenzuela*, 358 Or 451, 461, 365 P3d 116 (2015); *State v. Schwarz*, 228 Or App 273, 278, 208 P3d 971 (2009) ("Deciding which among competing dictionary definitions applies to a given statute is not a matter of listed order, but a matter of how the word at issue is used in context."). Although defendant's proposed dictionary definition may provide a plausible interpretation of the

statutory text, we do not believe that it reflects the legislature's intent.

The overall statutory scheme supports a conclusion that any force or control implied by the word "subjects" is inherent when a person actively participates in sexual conduct with individuals incapable of consent. *Cloutier*, 351 Or at 96 (context includes "the larger section within which the disputed provision appears"). Sexual abuse is divided into three degrees, and each degree uses the word "subjects." The statutes can generally be distinguished as follows: Third-degree sexual abuse, a Class A misdemeanor, prohibits "sexual contact" when the victim does not consent, or when the victim is unable to consent because of age.[3] ORS 163.415(1) ("A person commits the crime of sexual abuse in the third degree if: (a) The person subjects another person to sexual contact and: (A) The victim does not consent to the sexual contact; or (B) The victim is incapable of consent by reason of being under 18 years of age[.]"). Second-degree sexual abuse, a Class C felony, elevates the offense based on the specific type of sexual conduct. ORS 163.425(1) ("A person commits the crime of sexual abuse in the second degree when: (a) The person subjects another person to sexual intercourse, deviate sexual intercourse or *** penetration of the vagina, anus or penis with any object other than the penis or mouth of the actor and the victim does not consent thereto[.]"). First-degree sexual abuse, a Class B felony, elevates the offense further based on either of two factors: a particularly young victim, or the use of force. ORS 163.427(1) ("A person commits the crime of sexual abuse in the first degree when that person *** [s]ubjects another person to sexual contact and *** [t]he victim is less than 14 years of age; [or] *** [t]he victim is subjected to forcible compulsion by the actor[.]").

Those statutes all punish subjecting a person to nonconsensual sexual conduct, distinguishing between degrees based on the type of sexual conduct, the age of the victim, and the use of force. First-degree sexual abuse is established

---

[3] "Sexual contact" is defined as "any touching of the sexual or other intimate parts of a person or causing such person to touch the sexual or other intimate parts of the actor for the purpose of arousing or gratifying the sexual desire of either party." ORS 163.305(6).

by subjecting the victim to sexual contact through the use of "forcible compulsion." Necessarily, the term "subjects" does not mean the same thing as "forcible compulsion."

We note that "forcible compulsion" is defined at ORS 163.305(2) as meaning "to compel by (a) [p]hysical force; or (b) [a] threat, express or implied, that places a person in fear of immediate or future death or physical injury to self or another person, or in fear that the person or another person will immediately or in the future be kidnapped." That is the level of control that the legislature has determined is necessary to override a person's will. In *State v. Marshall*, 350 Or 208, 253 P3d 1017 (2011), the Supreme Court considered what level of force was required to establish "forcible compulsion." The court concluded that "'forcible compulsion' *** is greater in degree or different in kind than the minimal force that is inherent in 'subjecting' a victim to 'sexual contact.'" *Id.* at 225. "The physical force must be sufficient to 'compel' the victim, against the victim's will, to submit to or engage in the sexual contact, but it need not rise to the level of violence." *Id.* Defendant argues that "subjects" requires a showing that defendant "exerted control and subjugate[ed]" the victim. That interpretation would make the requirements for subjecting a victim to deviate sexual intercourse remarkably similar to those for forcible compulsion. We do not think that the legislature intended for the minimal force that is inherent in subjecting a minor victim to be equivalent to forcible compulsion. *See id.* at 221 ("[A] comparison of third-degree and first-degree sexual abuse leads to the conclusion that *** the level of force that is involved must be greater than or qualitatively different from the simple movement and contact that is inherent in the action of touching an intimate part of another.").

A statute's context also includes "related statutes." *See State v. Klein*, 352 Or 302, 309, 283 P3d 350 (2012). The influence of an adult over a minor is established by operation of law; the legislature has determined that minors do not have the ability to consent to a sexual act. ORS 163.315(1)(a) ("A person is considered incapable of consenting to a sexual act if the person is *** [u]nder 18 years of age."). Furthermore, ORS 163.315(2) provides that "[a] lack of verbal or physical resistance does not, by itself, constitute

consent[.]" ORS 163.315 supports a conclusion that an adult "subjects" a minor to deviate sexual intercourse if the adult causes the minor to be exposed to that sexual conduct. Additionally, the Supreme Court's conclusion in *Ofodrinwa*, 353 Or at 519, that "[a] person who is incapable of giving consent *** 'does not consent'" strongly suggests that the word "subjects" in ORS 163.425(1) does not require the state to prove that the deviate sexual intercourse was against the minor's will. To accept defendant's interpretation—that "subjects" means to exert control over a minor—would mean that, by using the word "subjects," the legislature intended to excuse sexual conduct with minors unless the conduct was initiated by the defendant or is against the minor's will in some way. We reject that interpretation and decline to read such a contradictory intent into the statute.

Based on the context of the term "subjects" in ORS 163.425(1)(a), we conclude that the legislature intended the term to mean the latter definition in *Webster's*, "to cause to undergo *** a particular action or effect : EXPOSE <hated to ~ his wife to such company> <unwilling to ~ himself to any inconvenience>[.]" *Webster's* at 2275. Expose is a synonymous cross-reference that is defined as "make accessible to something that may prove to be detrimental *** to submit or subject to an action or *influence* <~ children to good books>." *Webster's* at 802 (emphasis added). That definition describes some level of causation through influence or participating in acts, rather than actual control or dominion.

Under that definition, the state did not need to prove that defendant exerted control over the victim or that defendant initiated the deviate sexual intercourse in order to show that defendant knowingly subjected B to deviate sexual intercourse. We agree with the trial court's interpretation of the term "subjects" in ORS 163.425(1). If the state proved that defendant knowingly caused B to be exposed to his erect penis and, thus, actively participated in the oral sex, the state will have met its burden to show "the minimal force inherent" in "subjecting" B to deviate sexual intercourse. As the trial court correctly noted, if a person truly was sexually accosted by a minor and promptly disentangled themselves from the sexual contact, the knowledge element would prevent a person from being convicted of the crime.

Thus, the trial court did not err when it denied defendant's request to argue his interpretation of the term "subjects" in ORS 165.425(1) to the jury.

Affirmed.