***This is a nonprecedential memorandum opinion pursuant to ORAP 10.30 and may not be cited except as provided in ORAP 10.30(1).***

Argued and submitted July 26; conviction on Count 6 reversed and remanded, remanded for resentencing, otherwise affirmed September 28, 2022; petition for review denied February 23, 2023 (370 Or 789)

### STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

### JOEL BELTRAN-CASILLAS,
*Defendant-Appellant.*

Washington County Circuit Court
19CR07829; A173953

Janelle F. Wipper, Judge.

Kenneth A. Kreuscher argued the cause and filed the brief for appellant.

Jordan R. Silk, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General.

Before James, Presiding Judge, and Aoyagi, Judge, and Joyce, Judge.

JOYCE, J.

Conviction on Count 6 reversed and remanded; remanded for resentencing; otherwise affirmed.

**JOYCE, J.**

Defendant appeals from a judgment of conviction for first-degree rape, second-degree sexual abuse, and third-degree sexual abuse. His convictions stem from defendant's rape and abuse of his teenage daughter. On appeal, defendant challenges nonunanimous jury instructions and the trial court's acceptance of a nonunanimous verdict on Count 6, the third-degree sexual abuse charge. We agree with the state's concession of the error and therefore reverse and remand for a new trial on that count. Defendant also raises two claims of error relating to the trial court's exclusion of evidence relating to the victim's mental and physical health. We affirm the remaining convictions.

## FACTUAL BACKGROUND

We provide a brief overview of the factual background, reserving a more detailed recitation of the relevant facts to our discussion of defendant's specific claims of error.

At the time of the crimes, the victim was 14 years old. In early morning hours, defendant entered the victim's bedroom, pulled down her pants, took off his own pants, and penetrated her vagina with his penis. The victim took her cell phone to the bathroom and, not wanting to awaken anyone else in the house, texted 9-1-1 and reported that defendant had raped her. The victim left the house and met with officers, who took her several blocks away to talk with her. She again stated that defendant had raped her.

The victim then went to the hospital, where she was examined by a doctor. The victim told the doctor that defendant had put his fingers into her vagina and put his penis into both her vagina and her anus. The doctor collected swabs from the victim. Forensic testing showed that defendant's DNA was present in the victim's vagina and anus.

A week and a half later, the victim went to CARES Northwest, a center that works with children who have experienced sexual abuse and neglect. The victim underwent a forensic interview and a medical examination. The victim

recounted the same account of the rape and sexual abuse that she had at the hospital.[1]

Defendant denied raping his daughter. Defendant was subsequently charged with a number of sexual offenses. After a jury trial, defendant was convicted of the crimes described above.

## NONUNANIMOUS JURY INSTRUCTIONS AND VERDICT

On appeal, defendant argues that the trial court erred in instructing the jury that it could return a nonunanimous verdict of guilty and further erred in accepting a nonunanimous verdict on the third-degree sexual abuse charge (Count 6). The state concedes that the trial court erred in accepting a nonunanimous verdict on the sexual abuse charge. We agree and therefore reverse and remand for a new trial on that count. The trial court's instructional error is harmless as to the other counts, however, because the jury reached unanimous verdicts on the remaining counts for which it found defendant guilty. *State v. Ciraulo*, 367 Or 350, 354, 478 P3d 502 (2020), *cert den*, 594 US ___, 141 S Ct 2836, 210 L Ed 2d 950 (2021) (unanimous verdict renders nonunanimous instructional error harmless beyond a reasonable doubt). We therefore reject defendant's challenge to the convictions that were based on unanimous verdicts.

## EVIDENTIARY ERRORS

Defendant also raises two separate but somewhat related evidentiary issues. In his third assignment of error, defendant argues that the trial court erred in excluding evidence of the victim's mother's statements in a CARES questionnaire about the victim's emotional and physical health. In his fourth assignment of error, defendant argues that the trial court erred in excluding the victim's testimony that she engaged in self-harm. Because any error in excluding the victim's mother's statements was harmless, we reject defendant's third assignment of error. And because the trial court correctly excluded the evidence of self-harm, we also reject defendant's fourth assignment of error.

---

[1] The victim also recounted the same account during the grand jury proceedings.

At his trial, defendant's theory of defense was that the victim had fabricated the allegations of rape and sexual abuse because she was angry at defendant and was experiencing emotional difficulty. The victim testified at trial. Contrary to her previous statements to law enforcement, medical personnel, CARES, and the grand jury, the victim testified that she could not really remember what happened. She stated that she did not know what "rape" meant when she texted 9-1-1 and that she was not being truthful: "I know a lot of the time I exaggerate things, so to a certain extent I know I said some things that I shouldn't have." She testified that she was angry and annoyed the day that she made the allegations because her parents had made her go to a party that she did not want to attend. She was also angry because during the party, her father took her phone away and went through her messages. She explained that her parents are "really strict" and that she had "felt really trapped for a long time." She expressed that she has a "really bad" temper that makes her "just blow up" and "do things * * * that [she] would not do if [she] weren't upset" and that she regrets afterward. She also expressed that she had been finding it "hard to be like happy" and "took it out on people."

Defense counsel then asked the victim whether she had ever "take[n] out [her] feelings on [her]self?" The victim responded that "[f]or a good amount of time, I was self-harming."

The state objected, arguing that that evidence was "prejudicial for [the victim], embarrassing, not relevant to, * * * their determination of whether this happened or not" and asserting that this "is the reason why we have these rules against character evidence." Defendant argued to the contrary, stating that the evidence is "clearly relevant to her state of mind when she was making the accusations, to motive and bias against—in order to get attention from people, about her own, * * * credibility in making the accusations and allegations[.]" He also argued that the act of self-harm is not a "specific act[] that would solely go to propensity[.]" The court asked counsel how the victim's acts of self-harm helped the jury determine whether the rape and abuse had occurred, and defendant reiterated that the acts went to the victim's state of mind and credibility. He elaborated that

because the victim was angry at her father for his strict rules and having her "emotional needs neglected at home *** it would give her motive in which to kind of shake things up and to make an allegation."

The court noted that defendant had already elicited "lots of testimony" about how the victim was feeling and her views on her parents' rules. It further concluded that the self-harm evidence was "very explosive" and that defendant had not presented any connection between the self-harm evidence and motive or bias. It therefore ruled that the evidence was "not helpful" or relevant and struck the victim's statement from the record.[2]

The victim's mother and brother both testified consistently with the victim's descriptions of her mood and affect. Her mother testified that the victim would get "very mad" about her parent's strict rules, and that on the day of the assaults, the victim "was not happy" and "was very mad" because defendant had taken her phone away from her. The victim's mother also testified that the victim "lies." The victim's brother, when asked if the victim was truthful, responded "not a hundred percent of the time."

The forensic interviewer who conducted the victim's interview at CARES also testified at trial. She explained that she gave the victim's mother a questionnaire that includes a social and medical history. That history was provided to the doctor who conducted the medical examination and became part of the medical record. The victim's mother indicated on the questionnaire that the victim had problems sleeping, and had "anxiety and fears," "sadness or withdrawal," "difficulty concentrating," had been "lying," and had "thoughts of hurting self." She indicated that the victim had "injuries to self," stating that she had seen superficial cuts on the victim's arms about four months prior to the sexual assault. The questionnaire also reflected the victim's mother's statements that the victim had difficulties at school, with social relationships, and that she had experienced bullying.

---

[2] The court allowed defendant to make a further offer of proof that included that the victim was "very depressed, and part of that depression, she engaged in self-harming behavior involving cutting," that her brother and mother observed the cuts, and that she was self-harming at a time when she was "very depressed and angry and sad" close in time to the rape and sexual abuse.

The state objected to the victim's mother's statements contained in the questionnaire, arguing that they constituted inadmissible hearsay. Defendant argued that the statements were made for the purpose of a medical diagnosis and thus came within the hearsay exception for such statements. OEC 803(4). Defendant further argued that the forensic interviewer had the training and experience necessary to lay the foundation for the statements to be admitted under that exception. In response, the state argued that because the forensic interviewer was not the person making a medical diagnosis—rather, that would be the doctor—the statements could not come in through the interviewer.

The trial court agreed with the state and sustained the objection. It observed that defendant had not laid the foundation for the medical diagnosis and allowed defendant to provide an offer of proof. After that offer of proof, the court asked how the statements were relevant. Defendant explained that the statements were relevant because they described the victim's "mental health, her bias, and perhaps motive, in making these allegations." The court confirmed its earlier ruling that defendant had not laid the necessary foundation and further ruled that "given the witness's background, she is not the one to explore any potential relevancy of this issue[.]"

As noted, on appeal, defendant argues that the trial court erred in excluding the victim's mother's statements on the CARES questionnaire and the victim's testimony that she engaged in acts of self-harm. We begin with the latter claim of error.

Defendant asserts that the evidence of the victim's self-harm is relevant because that evidence "would have provided the jury with a concrete example of how the victim's mental difficulties, temper, and tendency to blow up conflicts led her to engaging in self-destructive and self-harming actions of which making false allegations against defendant would certainly be one."[3] Below, defendant analogized the

---

[3] Alternatively, defendant's argument could be understood to be that the victim's bad character—her "temper, and tendency to blow up conflicts"—had caused her to falsely accuse defendant. That argument would rely on propensity reasoning and, consequently, could not lead to admission of the evidence

act of self-harm to a false allegation: "[I]f she did make a false allegation, right, that, in some macro-sense, is an act of self-harm."

We disagree. The problem with that theory of relevance is that, as the trial court recognized, the fact that the victim's mental state was such that it had led her to harm herself does not allow an inference that her state of mind also made her more likely to falsely accuse defendant. The record indicates that the victim's emotional issues led to her self-harm, but nothing in this record connects her self-harming to the possibility that she would make a false accusation. *See State v. Bivins*, 191 Or App 460, 467-68, 83 P3d 379 (2004) (an inference is reasonable "[i]f there is an experience of logical probability that an ultimate fact will follow a stated narrative or historical fact"; if that experience of logical probability is absent, it is impermissible speculation); *but see State v. Hedgpeth*, 365 Or 724, 731, 452 P3d 948 (2019) (the suggestion "that reasonable inferences are limited to those that follow 'necessarily' from the established facts, or as a matter of probability through 'logical syllogism,' unduly narrows the test that courts must apply when reviewing a motion for judgment of acquittal."). Defendant's analogy that a false accusation *is* a kind of self-harm is unsupported by the record. Under the circumstances, the trial court did not err in concluding that the victim's statement that she harmed herself was irrelevant.

Turning to the trial court's exclusion of the victim's mother's statements in the CARES questionnaire, we agree with the state that any error in excluding those statements was harmless. We will affirm a defendant's conviction if there is little likelihood that erroneously excluded evidence affected the verdict. *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). An evidentiary error is harmless if the evidence is "merely cumulative of other admitted evidence and not qualitatively different than other admitted evidence." *State v. Blaylock*, 267 Or App 455, 472, 341 P3d 758 (2014),

---

under OEC 404(3). *State v. Skillicorn*, 367 Or 464, 476, 479 P3d 254 (2021) ("Evidence is barred by OEC 404(3) if the chain of logical relevance connecting the evidence to the fact it is proffered to prove relies on an inference relating to a person's character or propensities.") (internal quotation marks and brackets omitted).

*rev den*, 357 Or 299 (2015) (internal quotation marks omitted). In assessing whether an error is harmless, we consider the nature of the evidence in the context of other evidence on the same issue, specifically "whether the finder of fact would have regarded the evidence as duplicative, cumulative, or unhelpful in its deliberations." *State v. Whitmore*, 257 Or App 664, 672-73, 307 P3d 552 (2013). We also consider the importance of the evidence to defendant's theory of the case. *Evans v. Nooth*, 318 Or App 162, 172, 506 P3d 469 (2022) (internal citation omitted).

Defendant sought to offer the victim's mother's statements in the CARES questionnaire to show that it was the victim's emotional turmoil, and not defendant's actions, that led to the victim's allegations. He points out that the CARES statements were made close in time to the victim's allegations and thus provided recent evidence of the victim's emotional state. In his view, the answers that the victim's mother provided in the CARES questionnaire—which reflected problems with sleep, sadness, fears, lying, and self-harm—support the defense's theory that the victim's allegations were false and motivated by her animosity towards defendant.

However, except for the evidence of self-harming, which we addressed above, evidence similar or identical to the excluded evidence came in through other testimony. The victim testified that her allegations against her father were untrue and that she was prone to exaggerate. The victim acknowledged that she had a "really bad temper" and that in 2018—the same year as the assault—she was "struggling." She further acknowledged that around the time of the rape, she was unhappy and "took it out on people." Her mother and brother both testified that the victim could be untruthful. That testimony permitted the jury to draw the same inferences that defendant sought to have the jury infer from the excluded evidence—that around the time of the rape, the victim suffered from emotional turmoil and had fabricated the rape allegation as a result. The excluded evidence would thus be cumulative and duplicative of other testimony. *See State v. Klein*, 352 Or 302, 314-15, 283 P3d 350 (2012) (exclusion is harmless if admitted evidence

permits essentially the same inferences as the excluded evidence).

Conviction on Count 6 reversed and remanded; remanded for resentencing; otherwise affirmed.